SAMHOUN v GREENFIELD CONSTRUCTION COMPANY, INC

Docket No. 87084. Submitted May 5, 1987, at Detroit. Decided September 10, 1987.

Wafic Samhoun, Mounira Samhoun, and others, brought an action in the Wayne Circuit Court against Greenfield Construction Company, Inc., the City of Flint, and Hubbell, Roth & Clark, Inc., seeking damages for injuries sustained by Wafic Samhoun (hereafter plaintiff) during his employment with Carl W. Decker, Inc. Carl W. Decker, Inc., was subsequently added as a third-party defendant pursuant to a complaint filed by Greenfield. The facts indicate that Greenfield was the general contractor on contracts with the City of Flint to construct wastewater pollution controls under a grant from the Environmental Protection Agency. Greenfield was required to mine a tunnel for such purposes. Greenfield thereafter contracted with Decker, a manufacturer of mining machines, to construct a mining machine especially for the job. Plaintiff was injured at Decker's plant while attempting to maneuver a sheet of steel with a crane so that he could weld the other side of the sheet of steel. The trial court, James E. Mies, J., granted a motion for summary disposition of the City of Flint and Greenfield. Plaintiffs appeal only from the grant of summary disposition as to Greenfield.

The Court of Appeals held:

1. Summary disposition in favor of Greenfield was proper.

2. Greenfield owed no duty to plaintiff under the circumstances of this case. The construction of a tunnelling machine does not present a peculiar risk or special danger sufficient to hold a contractor liable for all injuries that arise therefrom. The trial court correctly held that, as a matter of law, Decker was not involved in an inherently dangerous activity when it was manufacturing the tunnelling machine.

3. Plaintiff's case does not fit within the parameters of the

REFERENCES

Am Jur 2d, Negligence §§ 33 et seq.

Am Jur 2d, Summary Judgment §§ 26 et seq.

Duty and liability of subcontractor to employee of another contractor using equipment or apparatus of former. 55 ALR4th 725.

retained control doctrine as contained in *Funk v General Motors Corp*, 392 Mich 91 (1974).

4. The manufacturing work being done by Decker cannot fairly be construed as contract work or performance of the City of Flint and Greenfield contract. The trial court did not err in holding that Greenfield did not have a contractual duty to protect plaintiff.

5. There was no duty on the part of Greenfield to its employees at Decker's plant which could be transferred into a duty to plaintiff.

Affirmed.

1. MOTIONS AND ORDERS — SUMMARY DISPOSITION — ISSUES OF MATERIAL FACT.

A motion for summary disposition for lack of a genuine issue of material fact tests the factual support for the plaintiff's claim; the trial court must consider the affidavits, pleadings, depositions, admissions and documentary evidence and, if the kind of record which might be developed, giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ, the motion should be denied; the motion must not be granted unless the court is satisfied that it is impossible to support the claim at trial because of some deficiency which cannot be overcome (MCR 2.116[C][10]).

2. NEGLIGENCE — DUTY.

The threshold question of duty in a negligence action is an issue of law for the court's resolution; a duty arises from the relationship of the parties and involves a determination of whether the defendant has any obligation to avoid negligent conduct for the benefit of the plaintiff; the question is whether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other.

3. NEGLIGENCE — INHERENTLY DANGEROUS ACTIVITIES.

The requirements for application of the inherently dangerous activity doctrine to a contractor are not met in a negligence action by an employee of a subcontractor involving the manufacture of a machine by the subcontractor where there is no evidence that, at the time the contractor entered into the contract with the subcontractor for the manufacture of the machine, the contractor was aware that the manufacture of the machine would involve a risk of danger to the subcontractor's workers, where the subcontractor was in the business of manu-

facturing the machine and such was a routine activity, and where the construction of the machine did not present a peculiar risk or special danger sufficient to hold the contractor liable for all injuries that arose therefrom.

4. NEGLIGENCE — RETAINED CONTROL — CONTRACTORS — SUBCON-
    TRACTORS.
    An owner or contractor may be subject to liability when an employee of a subcontractor is injured if the owner or contractor sufficiently retained control of the subcontractor's activities.

5. CONTRACTS — NEGLIGENCE — CONTRACTORS — SUBCONTRACTORS —
    RETAINED CONTROL.
    It is part of the business of a general contractor to assure that reasonable steps within its supervisory and coordinating authority are taken to guard against readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen.

*Goodman, Eden, Millender & Bedrosian* (by *James A. Tuck*), for plaintiffs.

*Law Offices of Franklin, Bigler, Berry & Johnston, P.C.* (by *J. Steven Johnston* and *Richard R. Danforth*), for Greenfield Construction Company, Inc.

Before: BEASLEY, P.J., and HOOD and E. E. BORRADAILE,* JJ.

PER CURIAM. Plaintiffs appeal as of right from an order granting the motion for summary disposition of defendant Greenfield Construction Company, Inc., pursuant to MCR 2.116(C)(10), formerly GCR 1963, 117.2(3). We affirm.

Defendant Greenfield Construction Company was the general contractor on two contracts with the City of Flint to construct wastewater pollution controls under a grant from the Environmental Protection Agency. The contracts required Greenfield to mine a 25,000-foot-long tunnel with a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

twelve-foot diameter, and to provide a concrete lining for a finished eight-foot water tunnel inside. Third-party defendant Carl W. Decker, Inc., was in the business of manufacturing mining machines. After Greenfield was awarded the contracts from the City of Flint, Greenfield began to look for a company to manufacture a tunnelling machine. The machine was to be constructed especially for the Flint job. In late August, 1978, the time for ordering the tunnelling machine was becoming increasingly critical to timely progress of the job. Finally, on October 18, 1978, Greenfield awarded a contract for the construction of a tunnelling machine, including a shield, excavator and backhoe, to Decker. Despite the fact that construction of a backhoe takes from six to eight months, Greenfield requested delivery on February 26, 1979. Manufacture took place at Decker's manufacturing plant in Detroit.

Plaintiff Wafic Samhoun, a welder employed by Decker, was injured while attempting to maneuver a sheet of steel with a crane so that he could weld the other side of it. The sheet of steel swung towards him, causing him to twist his back to avoid being hit. Plaintiff suffered a ruptured disc. Plaintiff and his family filed suit against Greenfield, the City of Flint, and Hubbell, Roth & Clark, Inc., the architects. Hereafter, all references to "plaintiff" will refer to Wafic Samhoun only. Greenfield subsequently filed a third-party complaint against Decker.

In his second amended complaint, plaintiff alleged the following against Greenfield: (1) Greenfield's negligent delay in ordering the machinery required Greenfield to put tremendous pressure on Decker, thereby causing Decker to put pressure on its employees, including plaintiff, causing plaintiff to work without taking proper safety precautions,

and causing plaintiff to work in a work area where other employees were likewise not taking proper safety precautions; (2) plaintiff was performing an inherently hazardous activity for a subcontractor of Greenfield, thereby making Greenfield liable; (3) Greenfield was directly negligent in exercising and failing to exercise its retained control over the conduct of plaintiff's employer, that control evidenced by the presence of two of Greenfield's employees and one of Greenfield's subcontractors in Decker's plant full time for two months; (4) Greenfield was directly negligent through the breach of a duty assumed by contract with the City of Flint to provide plaintiff a safe workplace; and (5) Greenfield was directly negligent in failing to provide both Greenfield employees and Decker employees who worked together a safe common work area in the Decker plant in the weeks before the accident. On March 7, 1985, the court granted the motion for summary disposition of Hubbell, Roth & Clark, Inc. On August 5, 1985, the court granted the motion for summary disposition of the City of Flint and Greenfield. Plaintiff appeals only from the grant of summary disposition as to Greenfield.

Plaintiff first claims that summary disposition was improper inasmuch as this was a negligence action. Plaintiff correctly notes the various rules pertaining to summary disposition: the court must give the benefit of any reasonable doubt to the opposing party, inferences are to be drawn in favor of the party opposing the motion, courts are liberal in finding that genuine issues of material fact exist, a motion for summary disposition should be granted only where it is obvious that the nonmoving party's case is subject to some deficiency which cannot be overcome, and the court is not allowed to make findings of fact or to weigh the credibility

of affiants or deponents. Plaintiff claims that plaintiffs "did not get the benefits of these limitations on the granting of summary disposition to which they were entitled," and that, therefore, the order granting Greenfield's motion for summary disposition should be reversed.

The rule for granting a motion for summary judgment pursuant to GCR 1963, 117.2(3), now a motion for summary disposition pursuant to MCR 2.116(C)(10), was succinctly stated in *Linebaugh v Berdish,* 144 Mich App 750, 753-754; 376 NW2d 400 (1985):

> A motion for summary judgment under GCR 1963, 117.2(3) asserts that no genuine issue of material fact exists. Such a motion for summary judgment should not be granted when there is an issue of material fact, since the motion tests the factual support for plaintiff's claim. The trial court must consider the affidavits submitted, pleadings, depositions, admissions and documentary evidence. The opposing party must show that a genuine issue of disputed fact exists. The test is whether the kind of record which might be developed, giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ. This Court is liberal in finding a genuine issue of material fact. [Citations omitted.]

The motion must not be granted unless the court is satisfied that it is impossible to support the claim at trial because of some deficiency which cannot be overcome. *Dzierwa v Michigan Oil Co,* 152 Mich App 281, 284; 393 NW2d 610 (1986). After a thorough review of the record, we are satisfied that summary disposition in favor of Greenfield was proper in this case and that the court correctly applied all the rules of summary disposition. There was no dispute as to the facts

leading up to and including the accident. Thus, the only question is whether Greenfield was entitled to judgment as a matter of law. As will be seen in the remainder of this opinion, Greenfield was entitled to judgment as a matter of law on each of plaintiff's five counts.

Plaintiff first claims that the court erred in holding that Greenfield owed no duty to plaintiff as a matter of law. Plaintiff claims that Greenfield owed a duty to plaintiff because representatives of Greenfield came to Decker's plant to encourage Decker to rush completion of the machine and to familiarize themselves with the operation and maintenance of the equipment.

In his deposition, Angelo DiPonio, president of Greenfield, testified: "We had nothing to do with any assembling of the machine, it was totally his [Decker's] responsibility, his work; paid him so much for a completed machine." Carl W. Decker stated in his deposition that Greenfield did not supervise or direct the methods of fabrication at Decker's plant and did not tell Decker how to run his shop.

Plaintiff bases his duty argument on (1) Greenfield's negligence in taking too much time to order the machinery and (2) Greenfield's negligence in forcing Decker to rush the job by placing Greenfield's employees in Decker's plant. The trial court rejected these theories, stating that Greenfield owed no duty to plaintiff. We agree.

The concept of duty was explained in *Duvall v Goldin,* 139 Mich App 342, 347; 362 NW2d 275 (1984), lv den 422 Mich 976 (1985):

> It is equally well settled that in a negligence action the threshold question of duty is an issue of law for the court's resolution. Prosser, Torts (4th ed), § 53, p 324; *Elbert v Saginaw,* 363 Mich 463;

109 NW2d 879 (1961). A duty arises from the relationship of the parties and involves a determination of whether the defendant has any obligation to avoid negligent conduct for the benefit of the plaintiff. *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977).

In Prosser's terms, the question is "whether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other." Prosser, *supra,* § 37, p 206. It is apparent that resolution of the "duty" issue determines the existence and not the nature or extent of the actor's obligation. Although somewhat interrelated, those latter concepts are more properly considered in the evaluation of the actor's conduct in relation to the general and specific standards of care. See, *Moning, supra.* Here, we must focus on the issue of duty, for without a legal duty there is no actionable negligence. Or, stated another way, without duty, an individual will not be held liable for his negligent conduct.

In asserting that Greenfield owed a duty to plaintiff, plaintiff has cited no case to support his theory that one who orders material to be manufactured has a duty to give the manufacturer sufficient lead time in order to manufacture the articles and has a duty not to encourage the manufacturer to rush the job to completion. We agree with the trial court that no duty exists under the circumstances of this case.

Next, plaintiff claims that the trial court erred in holding that, as a matter of law, the inherently dangerous activity doctrine does not apply to make Greenfield liable. The doctrine of inherently dangerous activity is set forth in detail in *Bosak v Hutchinson,* 422 Mich 712; 375 NW2d 333 (1985), reh den 424 Mich 1201 (1985). In *Bosak,* the plaintiff, an employee of a subcontractor assigned to install cement slabs, was injured when he and

other employees of the subcontractor were assembling a crane which was to be used to assist in the installation of the slabs. *Bosak, supra,* p 717. The plaintiff alleged that the contractor ordered the crane to be assembled after working hours, so as not to interfere with the work to be done during the regular working hours of the day, and that the crane was thus assembled on a December evening when there was inadequate light and when the weather was cold and wet and the site muddy and slushy. *Id.,* p 722. The plaintiff filed suit, alleging that the contractor was liable because nighttime, midwinter crane assembly is an inherently dangerous activity. *Id.,* p 719. The trial court granted a directed verdict for the contractor on the issue of inherently dangerous activity, but we reversed. *Id.,* pp 723-724. The defendant appealed. The Supreme Court explained the doctrine:

> The inherently dangerous activity doctrine is an exception to the general rule that an employer of an independent contractor is not liable for the contractor's negligence or the negligence of his employees. 2 Restatement Torts, 2d, § 409, p 370; 41 Am Jur 2d, Independent Contractors, § 41, p 805.
>
> Michigan has recognized the exception for activities which reasonably can be foreseen as dangerous to third parties, and has, on occasion, allowed the doctrine to be applied to employees of the contractor performing the dangerous work. *McDonough v General Motors Corp,* 388 Mich 430; 201 NW2d 609 (1972); *Vannoy v City of Warren,* 15 Mich App 158; 166 NW2d 486 (1968), lv den 382 Mich 768 (1969).
>
> \* \* \*
>
> The Restatement of Torts, 2d, defines inherently dangerous activity in two sections, § 416 and § 427, which, according to Comment *a* to § 416, overlap. Section 416 refers to "peculiar risk":

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise." [2 Restatement Torts, 2d, § 416, p 395.]

Section 427 refers to "special danger":

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger." [2 Restatement Torts, 2d, § 427, p 415.]

*     *     *

Having examined these various definitions of what constitutes an inherently dangerous activity, it is apparent that an employer is liable for harm resulting from work "necessarily involving danger to others, unless great care is used" to prevent injury, *Inlis* [v *Millersburg Driving Ass'n,* 169 Mich 311, 331; 136 NW2d 443 (1912)], or where the work involves a "peculiar risk" or "special danger" which calls for "special" or "reasonable" precautions. 2 Restatement Torts, 2d, §§ 416, 427. It must be emphasized, however, that the risk or danger must be "recognizable in advance," *i.e.,* at the time the contract is made, for the doctrine to be invoked. Thus, liability should not be imposed where a new risk is created in the performance of the work which was not reasonably contemplated at the time of the contract. [*Bosak, supra,* pp 724-728.]

In *Bosak,* the Court stated that the concept that

the risk must be recognizable in advance was the key to Bosak's cause of action. The Court held that there was no evidence that the circumstances under which the work was done or the prescribed way of doing the work created a risk, recognizable in advance, of physical harm to others. *Id.*, p 729. The Court also noted that there was no evidence that the general contractor was aware at the time of entering into the contract with the subcontractor of the need to erect the crane on site or that it was anticipated that the erection was to be done at night. *Id.* Thus, the Court found that requirements of the inherently dangerous doctrine were not met. *Id.*, p 730.

The rationale of the *Bosak* Court is applicable in the instant case. When plaintiff was injured, he was engaged in welding on a sheet of steel at Decker's plant far away from the construction site. The sheet of steel was to be used in the tunnelling machine that Decker was manufacturing for Greenfield to use in making the tunnel. There was no evidence that, at the time Greenfield entered into the contract with Decker, it was aware that the manufacture of the tunnelling machine would involve a risk of danger to Decker's workers. Decker was in the business of manufacturing tunnelling machines and the manufacture of Greenfield's machine was a routine activity. We feel that the construction of a tunnelling machine does not present a peculiar risk or special danger sufficient to hold a contractor liable for all injuries that arise therefrom. Therefore, we hold that the trial court was correct in holding that, as a matter of law, Decker was not involved in an inherently dangerous activity when it was manufacturing the tunnelling machine.

Next, plaintiff claims that the trial court erred in holding that there was no evidence that Green-

field either retained control or exercised control over activities at Decker's plant. Plaintiff argues that, because the tunnelling machine was specially ordered by Greenfield, and had to meet Greenfield's precise requirements, and because Greenfield's employees were present in Decker's plant, liability of Greenfield can be assumed under the doctrine of retained control. An owner or contractor may be subject to liability when an employee of a subcontractor is injured if the owner or contractor sufficiently retains control of the subcontractor's activities. The doctrine was introduced in *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974). In *Funk,* the plaintiff, a plumber employed by a subcontractor, was hanging pipes from steel beams on an addition being built to a General Motors plant when he fell to the ground through a hole which he had created in the roof. He charged that General Motors, which was the owner of the building, and the contractor were liable for failing to implement reasonable safety precautions for men working above the ground and for allowing subcontractors to order men to work at dangerous heights without any protection from falls. *Funk, supra,* p 100. The Supreme Court held that, while ordinarily the owner of a building under construction is not responsible to construction workers for job safety, in that case General Motors could be found to have sufficiently exercised a retained control subjecting it to liability for the failure to implement reasonable safety precautions. *Id.,* p 101. The Court noted that an employee of General Motors and an employee of the contractor were constantly on the construction site and observed numerous tradesmen working on the beams without nets or safety lines. *Id.,* pp 103-104. The Court stated:

We regard it to be part of the business of a

general contractor to assure that reasonable steps within its supervisory and coordinating authority are taken to guard against readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen. [*Funk, supra,* p 104.]

Several of these factors are missing in the instant case. First, the danger to which plaintiff in the instant case was subjected was not readily observable. In *Funk,* workers such as the plaintiff therein could be seen working high off the ground without safety devices. In the instant case, plaintiff was injured when he moved a steel sheet with a crane. This was not a situation which Greenfield could readily observe as being dangerous. Second, the plaintiff here was not injured in a common work area. In *Funk,* the plaintiff was injured at the construction site where many different subcontractors were at work. In the instant case, only plaintiff was injured at Decker's plant. Third, there was no danger which created a high degree of risk to a significant number of workers. In *Funk,* all workers who worked on the steel beams were endangered. In the instant case, only plaintiff was endangered when the steel swung towards him. In short, plaintiff's case does not fit within the parameters of the retained control doctrine as set forth in *Funk.* Therefore, plaintiff's case suffers from a deficiency which cannot be overcome, and summary disposition was proper.

Next, plaintiff claims that the trial court erred in holding that Greenfield had no contractual duty to provide plaintiff with a safe place to work. Plaintiff claims that, since the tunnel was funded by the Environmental Protection Agency, Greenfield was subject to 40 USC 333(a). That statute states:

It shall be a condition of each contract which is entered into under legislation subject to Reorganization Plan Numbered 14 of 1950 (64 Stat 1267), and is for construction, alteration, and/or repair, including painting and decorating, that no contractor or subcontractor contracting for any part of the contract work shall require any laborer or mechanic employed in the performance of the contract to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his health or safety, as determined under construction safety and health standards promulgated by the Secretary . . . .

For his contention that Decker was a subcontractor within the meaning of 40 USC 333(a), plaintiff relies on 29 CFR 1926.13(c) (1986) which provides:

(c) The term "subcontractor" is under section 107 considered to mean a person who agrees to perform any part of the labor or material requirements of a contract for construction, alteration or repair. Cf. *MacEvoy Co v United States,* 322 US 102, 108-9 [64 S Ct 890; 88 L Ed 1163] (1944). A person who undertakes to perform a portion of a contract involving the furnishing of supplies or materials will be considered a "subcontractor" under this part and section 107 if the work in question involves the performance of construction work and is to be performed: (1) Directly on or near the construction site, or (2) by the employer for the specific project on a customized basis. Thus, a supplier of materials which will become an integral part of the construction is a "subcontractor" if the supplier fabricates or assembles the goods or materials in question specifically for the construction project and the work involved may be said to be construction activity. If the goods or materials in question are ordinarily sold to other customers from regular inventory, the supplier is not a "subcontractor." Generally, the furnishing of

prestressed concrete beams and prestressed structural steel would be considered manufacturing; therefore a supplier of such materials would not be considered a "subcontractor." An example of material supplied "for the specific project on a customized basis" as that phrase is used in this section would be ventilating ducts, fabricated in a shop away from the construction job site and specifically cut for the project according to design specifications. On the other hand, if a contractor buys standard size nails from a foundry, the foundry would not be a covered "subcontractor." Ordinarily a contract for the supplying of construction equipment to a contractor would not, in and of itself, be considered a "subcontractor" for purposes of this part.

Plaintiff's reliance on 29 CFR 1926.13(c) is misplaced. The mining machine Decker built for Greenfield was not intended for incorporation into the Flint project. Its purpose was to move earth so that a tunnel could be built. By supplying the mining machine to Greenfield, Decker did not become a subcontractor within the meaning of 29 CFR 1926.13(c). Furthermore, 40 USC 333 is self-restricting. By its own terms, it is inapplicable in this case. Its own language limits its applicability to contract work in performance of a contract. The manufacturing work being done by Decker cannot fairly be construed as contract work or performance of the City of Flint/Greenfield contract. Thus, the trial court did not err in holding that Greenfield did not have a contractual duty to protect plaintiff.

Finally, plaintiff claims that the trial court erred in holding that Greenfield did not breach a duty to its own employees to provide a safe workplace in the common work area where plaintiff was injured. Plaintiff alleges that Greenfield em-

ployees were working at Decker's plant for a period lasting from six weeks before plaintiff's injury to two weeks after plaintiff's injury, and that Greenfield thus had a duty to make sure that Decker used safe rigging practices. Plaintiff apparently feels that, in case the trial court did not err in holding that Greenfield owed no duty to plaintiff, Greenfield still had a duty to its own employees at the Decker workplace which duty could be transferred over to protect plaintiff.

The record reveals that Greenfield's employees were at Decker's plant only to observe and to oversee the manufacturing of the tunnelling machine. They were not directly assisting in the production of the tunnelling machine and were not employees of Decker. Thus, there was no duty on the part of Greenfield to its employees at Decker's plant which could be transferred into a duty to plaintiff.

There were no genuine issues of material fact and Greenfield was entitled to judgment as a matter of law on all of plaintiff's counts. We are satisfied that it is impossible to support any of plaintiff's claims at trial because of a deficiency which cannot be overcome. Thus, the trial court did not err in granting Greenfield's motion for summary disposition.

Affirmed.