**William JONES, Plaintiff,**

v.

**BASF CORPORATION, a New Jersey corporation, Defendant and Third Party Plaintiff,**

v.

**STANDARD MACHINE & EQUIPMENT COMPANY, a Delaware corporation, Third Party Defendant.**

No. 87–CV–1196–DT.

United States District Court, E.D. Michigan, S.D.

June 30, 1988.

D. Michael O'Bryan, Birmingham, Mich., for plaintiff.

Robert A. Marsac, Stephen R. Cochell, Detroit, Mich., for defendant and third party plaintiff.

Robert D. Horvath, Detroit, Mich., for third party defendant.

MEMORANDUM OPINION AND ORDER GRANTING BASF CORPORATION'S MOTION FOR SUMMARY JUDGMENT

WOODS, District Judge.

On March 29, 1986, plaintiff and a coworker were engaged in "cutting"[1] a 35 to 40' high by 30' wide circular tank into $5 \times 5'$ or $5 \times 4'$ sections. While plaintiff was cutting a section of the tank, the piece he was cutting "ripped in two." The left side of the piece struck and injured plaintiff on his left leg.

The accident occurred at the Wyandotte plant owned by defendant BASF Corporation (BASF). BASF, on October 17, 1980, had entered into a "Sales, Site Clearance and Restoration Contract," with third party defendant Standard Machine & Equipment

---

**1.** Plaintiff worked as a "burner." A burner essentially was a skilled laborer who used a 3'

torch to cut steel and thus dismantle equipment. The steel was then sold as scrap.

Company (Standard), plaintiff's employer. Pursuant to the contract, Standard served as the contractor on the site. Standard, in turn, entered into a contract with Continental Rigging and Hauling, Inc. (Continental), which served as a subcontractor.

Following the accident, plaintiff filed a workers' compensation claim against both Standard and BASF, claiming that the steel crushed his left foot and injured his ankle. The workers' compensation claim was "redeemed"[2] as to Standard for $46,000.00. Plaintiff also pursued a civil claim in Wayne County Circuit Court against Standard and Continental. The parties in that case accepted a mediation award of $150,000.00 against Continental and $1.00 against Standard.[3]

Plaintiff filed the instant action against BASF on September 30, 1986, claiming that BASF failed to employ a reasonably competent contractor and neglected to supervise and inspect the activities performed. BASF subsequently brought a third-party claim against Standard for express contractual indemnity.

BASF presently moves for summary judgment, claiming that it cannot be found liable to plaintiff because (1) it did not retain control over the work at the site and (2) the dismantling of the tanks was not an inherently dangerous activity. BASF also moved to strike an affidavit of plaintiff's expert, Brian P. Murphy, and to exclude his testimony at trial.

After hearing oral arguments on the above motions, this Court granted BASF's motion to strike the affidavit of Murphy and to exclude his testimony at trial, but took BASF's motion for summary judgment under advisement. Plaintiff subsequently moved for reconsideration of the order excluding Murphy's affidavit and testimony.[4]

Plaintiff argues that BASF should be held liable because it retained control over the work site and failed to discharge Standard as an incompetent contractor. In Michigan, a landowner generally is not liable in negligence to an employee of a contractor. *Funk v. General Motors Corp.*, 392 Mich. 91, 101, 220 N.W. 641 (1974). If, however, the landowner retains control of the work, the landowner may be found liable for the contractor's negligence. *Id.* The landowner must exercise more than "mere contractual control, safety inspections, and general oversight. The owner must retain the right to partially control and direct the actual construction work." *Miller v. Great Lakes Steel*, 112 Mich.App. 122, 127, 315 N.W.2d 558 (1982).

BASF offers extensive proof that

(1) it carefully investigated and negotiated an agreement with Standard, a company it found to possess expertise in the field of industrial dismantling;

(2) Standard fenced the work site and restricted access to its employees;

(3) BASF entered the premises only to inspect the progress of the work;

(4) BASF personnel conducting the progress inspections had little knowledge concerning safety measures taken in the dismantling of large industrial equipment; and

(5) BASF personnel never recommended how Standard should fulfill obligations under the contract.

Furthermore, plaintiff in his deposition admitted that Standard and Continental directed his activities at the work site.

In response, plaintiff relies on the deposition testimony of Charles William Axce, BASF's general manager. Plaintiff contends that Axce's testimony shows that BASF was aware of Standard's incom-

---

**2.** *See* Mich.Comp.Laws § 418.835 (permitting a lump sum settlement as full payment of a workers' compensation claim).

**3.** Plaintiff states that the judgment against Continental has never been satisfied due to Continental's undercapitalization and lack of insurance.

**4.** Standard also moved for summary judgment as to BASF's third-party indemnification claim. In view of the disposition of BASF's motion for summary judgment, the Court need not address Standard's motion for summary judgment or BASF's motion to strike the affidavit of Brian Murphy.

petence with respect to the lack of equipment needed to get the job done. Axce's testimony, however, at most reveals that he became aware that Standard lacked sufficient equipment after Standard fell behind the time schedule set forth in the agreement. The testimony falls far short of showing BASF's awareness of a safety hazard.

Plaintiff also contends that BASF's power to terminate the contract with Standard at any time constituted retained control of the work site. Under Michigan law, however, a contractual right to terminate contractors not complying with the landowner's regulations is insufficient as a matter of law to constitute control of the work. *Wolf v. Detroit Edison,* 156 Mich. App. 626, 630–31, 402 N.W.2d 16 (1986) (citing *Miller,* 112 Mich.App. at 127, 315 N.W.2d 558), *leave to appeal denied,* 428 Mich. 865 (1987).

Alternatively, plaintiff argues that BASF should be held liable under the inherently dangerous activity doctrine. The Michigan Supreme Court in *Bosak v. Hutchinson,* 422 Mich. 712, 375 N.W.2d 333 (1985), recently discussed the doctrine at length:

> The inherently dangerous activity doctrine is an exception to the general rule that an employer of an independent contractor is not liable for the contractor's negligence or the negligence of his employees. 2 Restatement Torts, 2d, § 409, p 370; 41 Am Jur 2d, Independent Contractors, § 41, p 805.
>
> Michigan has recognized the exception for activities which reasonably can be foreseen as dangerous to third parties, and has, on occasion, allowed the doctrine to be applied to employees of the contractor performing the dangerous work. *McDonough v General Motors Corp,* 388 Mich. 430; 201 NW2d 609 (1972); *Vannoy v City of Warren,* 15 Mich App 158; 166 NW2d 486 (1968), lv den 382 Mich 768 (1969).
>
> . . . .
>
> The Restatement of Torts, 2d, defines inherently dangerous activity in two sections, § 416 and § 427, which, according to Comment a to § 416, overlap. Section 416 refers to "peculiar risk":
>
> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise. [2 Restatement Torts, 2d, § 416, p 395.]
>
> Section 427 refers to "special danger":
>
> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger. [2 Restatement Torts, 2d, § 427, p 415.]
>
> . . . .
>
> Having examined these various definitions of what constitutes an inherently dangerous activity, it is apparent that an employer is liable for harm resulting from work "necessarily involving danger to others, unless great care is used" to prevent injury, *Inlis* [*v Millersburg Driving Ass'n,* 169 Mich 311, 331; 136 NW 443 (1912)], or where the work involves a "peculiar risk" or "special danger" which calls for "special" or "reasonable" precautions. 2 Restatement Torts, 2d, §§ 416, 427. It must be emphasized, however, that the risk or danger must be "recognizable in advance," i.e., at the time the contract is made, for the doctrine to be invoked. Thus, liability should not be imposed where a new risk is created in the performance of the work which was not reasonably contemplated at the time of the contract.

422 Mich. at 724, 726 & 727–28, 375 N.W.2d 333 (footnotes omitted).

The court in *Samhoun v. Greenfield Construction Company,* 163 Mich.App. 34, 413 N.W.2d 723 (1987), relied on *Bosak* in rejecting a claim of an inherently dangerous activity similar to that asserted by plaintiff. In that case, defendant Greenfield Construction Company was hired as a contractor to mine a 25,000 foot-long tunnel with a 12–foot diameter, along with a concrete lining for an 8–foot water tunnel inside. Greenfield, in turn, hired a subcontractor to construct a tunneling machine, including a shield, excavator and backhoe. Although construction of a backhoe normally took from six to eight months, Greenfield demanded delivery in just over four months. Plaintiff, who worked as a welder for the subcontractor, was maneuvering a sheet of steel with a crane so as to weld the opposite side of the steel. As the sheet of steel swung towards plaintiff, he twisted his back to avoid being hit by the steel. *Id.* at 36–37, 413 N.W.2d 723.

The court of appeals rejected plaintiff's claim of an inherently dangerous activity, reasoning that the construction of a tunneling machine did "not present a peculiar risk or special danger sufficient to hold a contractor liable for all injuries that arise therefrom." *Id.* at 44, 413 N.W.2d 723. Furthermore, the court rejected plaintiff's claim of negligence against Greenfield for rushing the construction of the backhoe. The court found no authority to support the "theory that one who orders material to be manufactured has a duty to give the manufacturer sufficient lead time in order to manufacture the articles and has a duty not to encourage the manufacturer to rush the job to completion." *Id.* at 41, 413 N.W. 2d 723.

This Court similarly finds that the dismantling of the tanks did not present a peculiar risk or special danger, recognizable in advance, of physical harm to others. As indicated by the statements of Axce and plaintiff's expert, Brian Murphy, the dismantling of the tanks was in fact a routine job; the only "dangerous activity" was the dismantling of the tank with insufficient equipment. BASF, whose personnel lacked experience in dismantling operations, could not have known at the time the agreement was reached of the need to use a crane or scaffolding in the dismantling of the tanks. Furthermore, BASF cannot be held liable for encouraging Standard to dismantle the tanks in a timely manner.

Because the dismantling of the tanks was not an inherently dangerous activity, and BASF retained no control over the work site, BASF's Motion for Summary Judgment is hereby GRANTED.

So ordered.