CARAMAGNO v TUCHEL

Docket No. 101255. Submitted August 10, 1988, at Detroit. Decided November 21, 1988. Leave to appeal applied for.

Michael Caramagno, a minor, was a passenger in the rear seat of a vehicle driven by Daniel C. Tuchel when the vehicle was struck by another owned and operated by Charlotte Bryant. Caramagno was seriously injured. Thomas Caramagno, as next friend of Michael Caramagno, filed suit against Tuchel, Carl Motor Sales, Bryant, Lee Realty, and the City of Detroit in Wayne Circuit Court. A consent judgment was entered against Tuchel and Carl Motor Sales, the owner of the Tuchel vehicle. Lee Realty, for whom Bryant, a licensed real estate salesperson, was on official business at the time of the accident, filed a motion for summary disposition, arguing that Bryant was an independent contractor and that Lee Realty therefore could not be vicariously liable. The court, Richard P. Hathaway, J., agreed and granted summary disposition in favor of Lee Realty. Plaintiff appealed.

The Court of Appeals *held:*

A real estate broker has the right to control, even if that control is not exercised, every aspect of a real estate salesperson's employment and is, therefore, as a matter of law, vicariously liable for torts the real estate salesperson commits while in the course of employment. Plaintiff, not defendant Lee Realty, is entitled to summary disposition on this issue, and plaintiff is entitled to attempt to prove whether Bryant was negligent and, if so, plaintiff's damages.

Reversed.

J. B. BRUFF, J., dissented. He would hold that the question of whether Bryant was an employee or an independent contractor is a genuine issue of material fact and therefore was an inappropriate issue for summary disposition under MCR 2.116(C)(10). He would reverse and remand for a determination of the question by the factfinder after the taking of testimony.

REFERENCES

Am Jur 2d, Brokers §§ 83 *et seq.*

Right to private action under state statutes or regulations governing real-estate brokers or salesmen. 28 ALR4th 199.

TORTS — REAL ESTATE SALESPERSONS — REAL ESTATE BROKERS —
    VICARIOUS LIABILITY.
    A real estate broker has the right to control, even if that control
    is not exercised, every aspect of the employment of a real
    estate salesperson he has employed and is, therefore, as a
    matter of law, vicariously liable for torts the real estate sales-
    person commits while in the course of his employment (MCL
    339.1101 et seq.; MSA 18.425[101] et seq.; 1979 AC, R 338.2701
    et seq.).

*James F. Finn,* for plaintiff.

*Siemion, Huckabay, Bodary, Padilla & Morganti,
P.C. (by Raymond W. Morganti),* for Lee Realty.

Before: SULLIVAN, P.J., and HOOD and J. B.
BRUFF,* JJ.

HOOD, J. Plaintiff appeals as of right from an
order of the Wayne Circuit Court granting sum-
mary disposition to defendant Lee Realty Com-
pany pursuant to MCR 2.116(C)(10). The trial court
held that a real estate salesperson is, as a matter
of law, an independent contractor and that an
employing real estate broker therefore can not be
held liable for the salesperson's negligence. We
reverse.

The underlying facts in this case are not in
dispute. Michael Caramagno was a passenger in
the back seat of a vehicle being driven by defen-
dant Tuchel when it was struck by a vehicle
owned and operated by defendant Charlotte
Bryant. Michael was seriously injured. Bryant was
a licensed real estate salesperson who, at the time
of the accident, was on official business for defen-
dant Lee Realty, traveling from the realty office in
Roseville, Michigan to a residence which was to be
listed for sale through Lee Realty. Plaintiff filed a
complaint against Tuchel, Carl Motor Sales, which

* Circuit judge, sitting on the Court of Appeals by assignment.

was the owner of the Tuchel vehicle, Bryant, Lee Realty, and the City of Detroit. A consent judgment in the amount of $20,000 was subsequently entered against Tuchel and Carl Motor Sales. Lee Realty then filed a motion for summary disposition under MCR 2.116(C)(10), arguing that Bryant was an independent contractor and that Lee Realty therefore could not be vicariously liable. The trial court agreed, opining, "I do see the real estate salesperson as an independent contractor."

A motion for summary disposition pursuant to MCR 2.116(C)(10) asserts that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Samhoun v Greenfield Construction Co, Inc,* 163 Mich App 34, 39-40; 413 NW2d 723 (1987).

In this case, there is no dispute as to the fact that defendant Bryant is a real estate salesperson who was working for defendant Lee Realty. Thus the only question, in this matter of first impression, is whether defendant Bryant was a servant or an independent contractor of defendant Lee Realty. If she was an independent contractor, her employer, Lee Realty, is not liable for her torts because, as a general rule, an employer of an independent contractor is not liable for the negligence of the contractor or the contractor's employees. *Bosak v Hutchinson,* 422 Mich 712, 724; 375 NW2d 333 (1985), reh den 424 Mich 1201 (1985).

Our Supreme Court has defined an independent contractor as follows:

> "An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work.

Generally, the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the agreement to pay a fixed price for the work, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results." [*Marchand v Russell,* 257 Mich 96, 100-101; 241 NW 209 (1932), citing *Zoltowski v Ternes Coal & Lumber Co,* 214 Mich 231, 233; 183 NW 11 (1921), and 26 Cyc p 1546.]

In *Marchand,* the Court stated that the right to control,[1] even if not exercised, was decisive in determining that the defendant was a servant rather than an independent contractor. *Marchand, supra* at 102. The Court also noted that the determination of whether the defendant was a servant or independent contractor was dependent on the facts. *Marchand, supra* at 103. In *Holloway v Nassar,* 276 Mich 212; 267 NW 619 (1936), the Court stated that no issue of fact was raised, but the Court reversed the jury's decision that the individual defendant was a servant of the employer. The reason for reversal was that the plaintiff had "failed to sustain the burden of evidence that Nassar was a servant of defendant company at the time of the collision." *Holloway, supra* at 217.

In both *Marchand* and *Holloway,* the individual defendants were traveling salesmen involved in auto collisions, and the issues were whether they

[1] In some contexts, such as interpretation of the workers' compensation statute, the "economic reality" test is used as a guide to determine independent contractor status. Where, as in this case, the alleged liability is of a master vis-à-vis his servant under the theory of respondeat superior, the proper test is that of the right to control the employee. *Nichol v Billot,* 406 Mich 284; 279 NW2d 761 (1979).

were independent contractors so as to release their employers of vicarious liability. In each case, the Court determined the relationship as a matter of law. In *Sliter v Cobb,* 388 Mich 202; 200 NW2d 67 (1972), also a case involving alleged vicarious liability of a master, the Court held that summary disposition was improper because the plaintiffs had raised an issue of fact as to whether the defendant was an employee (servant) of his employer or an independent contractor; the Court remanded for a new trial.

In this case, on the other hand, the evidentiary facts are undisputed. We conclude that, because of the statute which regulates, inter alia, real estate brokers and salespersons, those evidentiary facts are also susceptible of only one inference, that defendant Bryant, as a real estate salesperson, is a servant of defendant Lee Realty and not an independent contractor.

The governing statute is the Occupational Code, MCL 339.101 *et seq.*; MSA 18.425(101) *et seq.* The statute states that all real estate salespersons must be licensed, that only one license is issued for any given period, and that salespersons' licenses must be held by a broker.

The statute distinguishes a real estate broker, defined as "an individual . . . who . . . sells . . . ," from a real estate salesperson, defined as "a person who . . . is employed either directly or indirectly by a licensed real estate broker to sell . . . ." MCL 339.2501(a), (b); MSA 18.425(2501)(a), (b). Whereas a real estate salesperson must have forty hours of instruction, a real estate broker is required to have an additional ninety hours. MCL 339.2504; MSA 18.425(2504). A real estate salesperson applies for a license through a broker, and the broker holds that license as follows:

(4) An applicant for a salesperson's license shall set forth the period of time during which the applicant has been engaged in the business, stating the name of the applicant's last employer and the name and the place of business of the individual, partnership, association, or corporation then employing the applicant or *in whose employ the applicant is to enter.* The application shall be accompanied by a written statement by the real estate broker *in whose employ the applicant is to enter* stating that in the real estate broker's opinion the applicant is of good moral character, and recommending that the license be granted to the applicant. [MCL 339.2505(4); MSA 18.425(2505)(4).]

Sec. 2506. The department shall issue to each person who meets the requirements of this article and who pays the appropriate license fee prescribed in section 37 of Act No. 152 of the Public Acts of 1979, a license in a form and size as prescribed by the department. This license shall show the name and address of the licensee and in case of a real estate salesperson's license, shall show *the name of the real estate broker by whom the real estate salesperson is employed.* A license shall contain data prescribed by the department. The license of a real estate salesperson shall be delivered or mailed to the real estate broker *by whom the real estate salesperson is employed* and shall be kept in the custody and control of the broker. A real estate broker shall conspicuously display the real estate broker's license and *the license of each real estate salesperson employed by the real estate broker* in the real estate broker's place of business. Written notice shall be given to the department by a licensee of a change of either a principal or branch business location. The department shall issue a new license for the unexpired period upon payment of the fee prescribed in section 37 of Act No. 152 of the Public Acts of 1979. The department shall prepare and deliver to a licensed person a pocket card not larger than

2¼ inches in width and 3¾ inches in length, which card, among other things, shall contain the name and address of the person, and *in case of a real estate salesperson the name and address of the employer,* and shall certify that the person whose name appears on the card is a licensed real estate salesperson or real estate broker. The date to be printed on the pocket card, except as set forth in this section, shall be prescribed by the department. [MCL 339.2506; MSA 18.425(2506). Emphasis added.]

The real estate salesperson's license is returned to the Department of Licensing and Regulation upon the termination of employment as provided in MCL 339.2507; MSA 18.425(2507):

Sec. 2507. When a real estate salesperson is discharged or terminates employment with a real estate broker by giving the employer a written notice of the termination, the real estate broker shall deliver or mail by registered mail to the department, within 5 days, the real estate salesperson's license. If a written notice of termination of employment is not served upon the real estate broker by the real estate salesperson, an application to the department for a transfer of license by the real estate salesperson shall be communicated in writing by the department to the real estate broker. As of the date of the communication, the notice shall operate as if a written notice were served by the real estate salesperson upon the real estate broker. The real estate broker, at the time of mailing the real estate salesperson's license to the department, shall address a communication to the last known residence address of the real estate salesperson, which communication shall advise the real estate salesperson that the license has been delivered or mailed to the department. A copy of the communication to the real estate salesperson shall accompany the license when mailed or delivered to the department. A real estate salesperson

shall not perform an act regulated by this article either directly or indirectly under authority of the license after the date of the department's receipts of the license from a broker. Another license shall not be issued to a real estate salesperson until the person returns the former pocket card to the department or satisfactorily accounts to the department for the pocket card. Not more than 1 license shall be issued to a real estate salesperson for the same period of time. The department may issue a new license to a salesperson upon the filing of an application for the transfer and the payment of the transfer fee prescribed in section 37 of Act No. 152 of the Public Acts of 1979.

A real estate salesperson is paid only by his or her employer:

> Sec. 2510. A real estate salesperson shall not accept from a person other than the real estate salesperson's employer a commission or valuable consideration for the performance of an act specified in this article. [MCL 339.2510; MSA 18.425(2510).]

When statutory language is clear and unambiguous, judicial interpretation to vary the plain meaning is precluded. *Edwards v Verploegh,* 153 Mich App 753, 755; 396 NW2d 521 (1986). All the statutory sections involved here are indicia of an employer-employee relationship, not that of an employer and independent contractor.

Additional support for this analysis is provided by the Michigan Administrative Code, 1979 AC, R 338.2701 *et seq.,* which states in pertinent part:

> Rule 25. (1) A salesman shall be licensed under a broker. A salesman shall not be licensed with more than 1 broker during the same period of time. A salesman shall not commence work until the salesman receives a pocket card from the

department, on original application or transfer, except as provided in subrule (2). A broker or salesman shall carry his pocket card while acting in such capacity. A duplicate card shall be issued on submission of satisfactory proof of loss of the original.

\* \* \*

Rule 37. . . .
(2) A salesman shall not close a real estate or business opportunity transaction except under direct supervision of a broker under whom the salesman is licensed. The broker shall assume full responsibility for execution of the closing statements prepared by the salesman or other persons acting under the broker's direct supervision.

\* \* \*

Rule 45. A broker shall not contract with a licensee in the broker's employ so as to lose the authority to supervise the licensee.

\* \* \*

Rule 52. (1) Advertising by a salesman shall be under the direct supervision and in the name of the employing broker.

It is thus apparent that the broker has the right to control, even if that control is unexercised, every aspect of the employment of a real estate salesperson employed by him and is, therefore, as a matter of law, vicariously liable for the torts of the real estate salesperson committed while in the course of employment. Plaintiff, and not defendant Lee Realty, is entitled to summary disposition on this issue, and plaintiff is entitled to attempt to prove whether Bryant was negligent and, if so, plaintiff's damages.

Reversed.

SULLIVAN, P.J., concurred.

J. B. BRUFF, J. *(dissenting)*. The majority has

gone to great lengths to show the extent of statutory and regulatory control a real estate broker may exercise over a real estate salesperson in his employ. Neither the conclusion that such control was exercised in this case nor the conclusion that the evidentiary facts presented here are susceptible of only one inference, i.e., that Bryant is a servant of Lee Realty rather than an independent contractor, is inevitably reached based upon the Occupational Code, MCL 339.101 *et seq.*; MSA 18.425(101) *et seq.*, and the Michigan Administrative Code, 1979 AC, R 338.2701 *et seq.*

I would hold that the question of whether Bryant was an employee or an independent contractor is a genuine issue of material fact and therefore an inappropriate issue for summary disposition under MCR 2.116(C)(10). *Michigan National Bank—Oakland v Wheeling,* 165 Mich App 738, 743-744; 419 NW2d 746 (1988).

Although the evidentiary facts presented are undisputed, no evidence was presented to show that Lee Realty exercised its statutory and regulatory right of control over Bryant. Moreover, even if evidence is presented to show that such control was exercised by Lee Realty, countervailing evidence indicative of an independent contractor relationship may also be presented, e.g., that the employment relationship amounted to no more than a contract to sell real estate by whatever legal means Bryant chose, so long as Bryant brought successfully negotiated sales to Lee Realty for closing.

It is apparent that the statutory and regulatory provisions cited by the majority were intended to protect the public by means of licensing from the illegal and unethical transfers of real property. In establishing these licensing controls, the statute makes the state's regulation easier by making the

brokers, who are likely to be more experienced, the focal point rather than the myriad salespersons. The statutory scheme should not be construed so as to make real estate brokers the masters of salespersons in every instance as a matter of law. *Sliter v Cobb,* 388 Mich 202, 206-207; 200 NW2d 67 (1972).

In *Nichol v Billot,* 406 Mich 284, 301-302, 306; 279 NW2d 761 (1979), our Supreme Court held that it is improper for the trial court to decide a question as a matter of law if a jury could draw conflicting inferences from the evidentiary facts and thereby reach a different conclusion. Because a factfinder could draw reasonably conflicting inferences from the evidence presented in this case, the question is one of fact. See *Noble v Roadway Express, Inc,* 153 Mich App 12; 394 NW2d 128 (1986).

I would reverse and remand for a determination of the question by the factfinder after the taking of testimony.