WOLFE v THE DETROIT EDISON COMPANY

Docket No. 87604. Submitted May 21, 1986, at Detroit. Decided October 28, 1986. Leave to appeal denied, 428 Mich —.

Plaintiff, Ernest Wolfe, an employee of Bechtel Power Corporation, was injured while working at the Belle River Powerhouse construction site, a property owned by defendant, The Detroit Edison Company. Plaintiff brought an action against defendant in the Wayne Circuit Court, alleging that defendant retained sufficient control over the project to impose liability upon it for Bechtel's negligence. The court, Thomas J. Foley, J., granted summary disposition in favor of defendant. Plaintiff appealed.

The Court of Appeals *held:*

The court did not err. The degree of control retained by defendant was primarily contractual control, safety inspections and general oversight. There was no evidence that defendant retained a right to partially control or direct the actual construction work.

Affirmed.

MASTER AND SERVANT — CONTRACTORS — NEGLIGENCE — TORTS.

Generally, a property owner is not liable to an employee of a contractor for the contractor's negligence; however, where the owner retains sufficient control of the work performed by the contractor which amounts to more than mere contractual control, safety inspections, and general oversight, liability for such negligence may be imposed.

*Theodore S. Andris, P.C.* (by *Theodore S. Andris*), for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr, Heaphy, Moore, Sills & Poling, P.C.* (by *Dennis B. Cotter*), for defendant.

REFERENCES

Am Jur 2d, Master and Servant § 186.

Am Jur 2d, Negligence §§ 458-461.

See the annotations in the Index to Annotations under Negligence.

Before: MacKenzie, P.J., and Beasley, and C. W. Simon,* JJ.

Per Curiam. Plaintiff appeals as of right from an order granting summary disposition in favor of defendant pursuant to MCR 2.116(C)(10). We affirm.

Plaintiff commenced this action against defendant to recover damages for knee injuries he sustained when he fell while working as an employee of the Bechtel Power Corporation at the Belle River Powerhouse construction site in St. Clair, Michigan. The Belle River Powerhouse is owned by defendant. Bechtel was a contractor in the construction of the Belle River Plant, the designer of the project, and the construction manager for the project. Belle River was a major construction project, its total cost being in excess of two billion dollars.

As a general rule, an owner of property is not liable to an employee of a contractor for negligence. If, however, the owner retains control of the work, liability may be imposed for the contractor's negligence. *Miller v Great Lakes Steel Corp,* 112 Mich App 122, 125; 315 NW2d 558 (1982); *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974). Plaintiff argues that, viewing the evidence in a light most favorable to plaintiff, there was a genuine issue of material fact as to whether defendant "retained control" over the Belle River construction project, so that the trial court erred in granting summary disposition in favor of defendant.

The facts concerning the degree of control defendant retained over the Belle River construction are primarily derived from the deposition testimony of Gary Western, defendant's "loss control

* Circuit judge, sitting on the Court of Appeals by assignment.

coordinator." He stated that there were two contracts between Bechtel and defendant. One related to Bechtel's management of the project and other contractors; the other related to the construction work Bechtel actually performed. Western's responsibility was to ensure that Bechtel was inspecting the site, holding safety meetings, investigating accidents, and maintaining adequate first aid facilities. Western reported to defendant's project superintendent, whose responsibility was to oversee the day-to-day operations of the construction. Defendant also had somewhere between 100 and 125 inspectors on the site whose responsibility was primarily to observe and report on the quality and quantity of work performed.

Western testified that defendant had control over the project's plans "[i]n a sense that we oversaw them. We had people in places to oversee what was on the board. How detailed that was, I don't know." Bechtel actually did the design work and drew up the plans. Moreover, Bechtel was responsible for safety in the area where plaintiff was injured. Bechtel employed personnel who checked for safety defects in that area. It was Bechtel's responsibility to cover and protect the turbine plaintiff was working on when he was injured.

There are no specific tests or guidelines for determining whether an owner has "retained control" of a construction project on its premises. However, other cases that have decided that issue are helpful in resolving the merits of plaintiff's claim that defendant had retained control of the Belle River project.

*Funk, supra,* is the controlling Michigan case dealing with an owner's liability for contractor's negligence. There, the plaintiff, a plumbing subcontractor employee doing work at a General Mo-

tors plant, was injured when he fell from a roof. In determining that General Motors had retained sufficient control of the construction project to render it liable for the plaintiff's injuries, the Court considered several factors including: (1) General Motors' internal division drew up the construction plans, wrote the contractual specifications, and acted as architectural supervisor; (2) it directly hired several of the contractors and wrote the contracts agreed to by them; (3) General Motors' representative could order the general contractor to terminate any prime or subcontractor within twenty-four hours and retained the right to hire additional subcontractors; and (4) General Motors had a representative at the construction site to interpret contract specifications and plans for the general contractor and to ensure that contract provisions such as safety requirements, quality and performance of the work, fire protection, price restraints and completion deadlines, were being fulfilled. The Court found that in light of these factors General Motors had exercised an "unusually high degree" of control over the construction project. *Id.,* p 105.

Similarly, in *Warren v McLouth Steel Corp,* 111 Mich App 496, 503; 314 NW2d 666 (1981), lv den 417 Mich 941 (1982), the plaintiff was injured when he fell from a steel beam in a plant owned by McLouth. The plaintiff was employed by Valley Consolidated Industries which had contracted with McLouth to do certain repair work at its plant. The jury returned a verdict against McLouth. McLouth appealed from the trial court's denial of its motion for a directed verdict on the issue of retained control. This Court affirmed, noting that McLouth's employee inspected the work on a daily basis, McLouth wrote the contract used by Valley, supplied Valley with materials and wrote the spec-

ifications for the work to be done, and McLouth also sent out instructions to bidders, received bids and selected the contractor. It also retained the right to discharge employees of a contractor who loitered in other parts of the plant.

The above cases should be contrasted with *Miller v Great Lakes Steel Corp, supra.* There, the plaintiff brought an action against Great Lakes for damages incurred as a result of injuries sustained by him while working for Great Lakes' contractor, Valley Consolidated Industries. Plaintiff appealed from the trial court's grant of defendant's motion for a directed verdict against plaintiff.

In *Miller,* the evidence presented on the issue of retained control consisted primarily of the testimony of a Great Lakes safety supervisor and of certain contractual provisions. The safety supervisor testified that he would inspect the job site and report any unsafe conditions which he observed to Great Lakes' field engineer. The testimony indicated, however, that Valley had a construction superintendent who was responsible for taking care of any problems. The contract provisions basically provided that Great Lakes would have the right to inspect the site and make safety investigations, to reject subcontractors chosen by Valley, to make changes in specifications and designs, and to take over the completion of the work if there was a failure on the part of Valley to perform. The evidence indicated that Great Lakes did not retain the right to exercise any substantive control over how Valley performed its work. This Court found that, on the basis of that evidence, the directed verdict was properly granted in Great Lakes' favor.

The *Miller* Court noted that a contractual right to terminate anyone who did not comply with the owner's rules and regulations was insufficient as a

matter of law to constitute "control" of the work. *Id.,* p 127. Similarly, this Court held that the specification of safety requirements in a contract is alone insufficient as a matter of law to constitute control. *Id.* The Court found that the control exercised by Great Lakes was no more than mere contractual control, safety inspections and general oversight. The *Miller* panel stressed that the owner must retain the right to partially control and direct the actual construction of the work in order to be held liable on a retained control theory. *Id.* This Court held that the contractual control and the testimony of defendant's safety supervisor were insufficient as a matter of law to raise a jury question under that theory.

In light of the foregoing, we believe that the trial court properly granted defendant's motion for summary disposition in the instant case. Similar to *Miller, supra,* the degree of control defendant retained over the Belle River construction project was primarily contractual control, safety inspections, and general oversight. Although defendant had somewhere between 100 and 125 inspectors at the construction site, their only responsibility was to observe and report on the quality and quantity of work performed. Bechtel designed the project and drafted the construction plans. Bechtel was responsible for engineering the project and managing other contracts between defendant and other subcontractors. Most importantly, there was no evidence that would indicate that defendant retained a right to partially control or direct the actual construction work. Therefore, even upon viewing the evidence in a light most favorable to plaintiff, we conclude that the trial court correctly granted defendant's motion for summary disposition.

Affirmed.