CANDELARIA v B C GENERAL CONTRACTORS, INC

Docket No. 202421. Submitted December 1, 1998, at Detroit. Decided June 4, 1999, at 9:20 A.M. Leave to appeal sought.

Thomas Candelaria, III, as personal representative of the estate of Thomas Candelaria, Jr., deceased, brought a wrongful death action in the Ingham Circuit Court against B. C. General Contractors, Inc. (BC), and Horizon Cablevision, Inc. The decedent was killed in an accident that occurred while he was laying cable wire across the surface of a state highway. Horizon had hired BC, an independent contractor, to install the cable and BC, in turn, hired Bob Rego, an independent contractor, to perform a portion of the work. The decedent was employed by Rego. The plaintiff alleged that BC was liable under a negligence theory because it retained control over the work performed by Rego and that Horizon was liable under a negligence theory on the basis of a nondelegable duty arising by virtue of the fact that it had obtained for the work a permit issued by the Michigan Department of Transportation. The court, William E. Collette, J., denied the defendants' motions for a directed verdict and granted the plaintiff's motion for a directed verdict against Horizon with regard to the issue of its negligence. The jury found that Horizon's negligence was a proximate cause of the accident, that BC was negligent and that its negligence was a proximate cause of the accident, and that the decedent had been negligent and his negligence was a proximate cause of the accident. The jury found the decedent to have been fifty percent at fault. The court entered a judgment against the defendants. The defendants appealed.

The Court of Appeals held:

1. The trial court erred in denying BC's motion for a directed verdict. A general contractor may be held responsible for its own negligence in failing to implement reasonable safety precautions where its retained and exercised control over a project was sufficient to create a corresponding duty to implement such precautions. The doctrine of retained control applies only in situations involving common work areas. At a minimum, for a general contractor to be held directly liable in negligence, its retention or control must have had some actual effect on the manner or environment in which the work was performed.

2. Because the decedent's work for Rego was not performed in a common work area, BC cannot be found liable under the doctrine of retained control. In addition, the control retained by BC did not have any effect on the manner or environment in which the work was performed. The judgment of the court regarding BC must be reversed and the matter must be remanded for entry of an order dismissing the action with regard to BC.

3. The Department of Transportation could not create a nondelegable duty owed by Horizon to the decedent simply by including a nonassignability provision in the permit.

4. The basis for the trial court's denial of Horizon's motion for a directed verdict was a third-party beneficiary theory based on the permit, a theory of liability that was not viable because the permit was not a contract. In order for a third-party beneficiary to enforce a promise, the promise must be made by way of contract. The court erred in relying on the third-party beneficiary theory as a basis for denying Horizon's motion for a directed verdict and in directing a verdict of negligence against Horizon on the basis of its failure to meet a specific condition of the permit to provide the necessary traffic controls. Under the circumstances of this case, it would be inappropriate to determine whether the rule described in 2 Restatement Torts, 2d, § 428, p 420, is viable and applicable to impose a nondelegable duty on Horizon. The judgment of the court with regard to Horizon must be reversed and the matter must be remanded for a new trial with regard to Horizon.

Reversed and remanded.

JANSEN, J., dissenting from the majority's decision to reverse the directed verdict against Horizon, stated that the trial court properly found that Horizon had a nondelegable duty to provide all necessary traffic control devices, as required under the permit, and that Horizon breached that duty. Horizon had a common-law duty to use due care in its project and the specific nondelegable duty to furnish the traffic control devices was set forth in the permit. The court correctly ruled that the decedent falls into the class of persons intended to be covered by the provision in the permit requiring Horizon to provide and maintain all necessary precautions to prevent injury or damage to persons and property from operations covered by the permit. The jury was properly instructed that the defendants had a duty to comply with state safety regulations; however, even if the giving of the instruction had been error, it would have been harmless as it relates to Horizon. The court's ruling that the plaintiff was entitled to an award of costs and attorney fees and the amount awarded was not an abuse of discretion. The verdict against Horizon should be affirmed.

1. NEGLIGENCE — GENERAL CONTRACTORS — SUBCONTRACTORS — DOCTRINE OF RETAINED CONTROL.

> An owner or general contractor who hires an independent contractor to perform a job generally may not be held liable in negligence to third parties or employees of the independent contractor, and the independent contractor is responsible for job safety; the doctrine of retained control provides that an owner or general contractor may be held responsible for its own negligence in failing to implement reasonable safety precautions where the owner or general contractor retained and exercised control over a project in a manner sufficient to create a corresponding duty to implement such precautions; such retention of control must have had some actual effect on the manner or environment in which the work was performed.

2. NEGLIGENCE — GENERAL CONTRACTORS — SUBCONTRACTORS — DOCTRINE OF RETAINED CONTROL — COMMON WORK AREAS.

> The doctrine of retained control applies only in those situations involving common work areas; there need not be multiple subcontractors working on the same site at the same time to have a common work area; what is required for a common work area is that the employees of two or more subcontractors eventually work in the same area.

3. CONTRACTS — THIRD-PARTY BENEFICIARIES.

> A promise must be made by way of contract in order for a third-party beneficiary to enforce the promise.

*Butzel Long* (by *James E. Wynne* and *James J. Giszczak*), for the plaintiff.

*Secrest, Wardle, Lynch, Hampton, Truex and Morley* (by *Janet C. Barnes* and *Roger F. Wardle*), for the defendants.

Before: McDONALD, P.J., and JANSEN and TALBOT, JJ.

TALBOT, J. Defendants B. C. General Contractors, Inc. (BC), and Horizon Cablevision, Inc., appeal as of right from a judgment for plaintiff Thomas Candelaria, III, as personal representative of the estate of Thomas Candelaria, Jr., deceased, entered after a jury trial. We reverse and remand.

I

Defendant Horizon, a company in the business of providing cable television service, hired defendant BC, as an independent contractor, to install cable television service in certain areas of Ingham County. BC, in turn, hired Bob Rego, also as an independent contractor, to perform a portion of the work involving aerial construction. Rego employed plaintiff's decedent, Thomas Candelaria, Jr. (hereafter Candelaria). Part of Rego's job involved laying cable wire across the surface of state trunk line M-106 in Ingham County. On the day of the accident, Rego's foreman and Candelaria were the only workers at the site. When the foreman needed more cable to work with, he asked Candelaria to release some slack from the reel. Instead of pulling slack from the reel by hand, which was the standard procedure, Candelaria turned the reel on its side and began pushing it like a wheelbarrow. Because the foreman was concerned that Candelaria's action might tighten the cable rather than create slack, he ran to the reel and flipped it back to its usual position. Just as the foreman turned the reel, a passing car snagged a portion of the cable that had become elevated from the surface of the highway. This caused the reel to jerk forward into Candelaria, killing him instantly.

Plaintiff filed a wrongful death action against defendants, alleging that their negligence caused Candelaria's death. At the close of the proofs, plaintiff's theory with respect to BC was that it could be held liable in negligence on the basis of its retention of control over the work performed by Rego. Plaintiff's theory with respect to Horizon was that it could be held liable in negligence pursuant to a nondelega-

ble duty arising by virtue of the fact that it had obtained a permit issued by the Michigan Department of Transportation (MDOT). Defendants moved for directed verdicts and their motions were denied. The trial court granted plaintiff's motion for a directed verdict against Horizon with regard to the issue of its negligence. The jury found (1) that Horizon's negligence was a proximate cause of the accident, (2) that BC was negligent and that its negligence was a proximate cause of the accident, and (3) that Candelaria himself was negligent, that his negligence was a proximate cause of the accident, and that he was fifty percent at fault. The final judgment entered against defendants was in the amount of $248,248.48.

II

On appeal, BC argues that the trial court erred in denying its motion for a directed verdict. We agree. BC moved for a directed verdict on the ground that it did not retain and exercise sufficient control over Rego's work to be held liable for Candelaria's injury. The trial court reasoned that, although there was not a "great deal" of evidence of BC's control, there was enough to present the issue to the jury.

This Court reviews de novo a trial court's decision with regard to a directed verdict. *Meagher v Wayne State Univ*, 222 Mich App 700, 708; 565 NW2d 401 (1997). When evaluating a motion for a directed verdict, a court must consider the evidence and all legitimate inferences arising from the evidence in a light most favorable to the nonmoving party. A directed verdict is appropriate only when no material factual question exists upon which reasonable minds could

differ. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975).

A

As a general rule, when an owner or general contractor hires an independent contractor to perform a job, the owner or general contractor may not be held liable in negligence to third parties or employees of the independent contractor. See *Bosak v Hutchinson,* 422 Mich 712, 724; 375 NW2d 333 (1985); *Funk v General Motors Corp,* 392 Mich 91, 101-102; 220 NW2d 641 (1974), overruled in part on another ground by *Hardy v Monsanto Enviro-Chem Systems, Inc,* 414 Mich 29; 323 NW2d 270 (1982); *Samodai v Chrysler Corp,* 178 Mich App 252, 255; 443 NW2d 391 (1989); 2 Restatement Torts, 2d, § 409 & comments, pp 370-371. Instead, the independent contractor is immediately responsible for job safety. *Funk, supra* at 102; *Samodai, supra* at 255. There are, however, certain circumstances under which an owner or general contractor may be held liable for either the independent contractor's negligence or for its own negligence. One commonly recognized exception to the general rule is the "doctrine of retained control." See, e.g., *Funk, supra* at 101-109; *Plummer v Bechtel Constr Co,* 440 Mich 646, 648-673; 489 NW2d 66 (1992) (opinions of LEVIN, J., and BOYLE, J.); *Samhoun v Greenfield Constr Co, Inc,* 163 Mich App 34, 45; 413 NW2d 723 (1987). Although the doctrine is often recognized, our review of the cases reveal some confusion accompanying its application.

The concept of "retained control" is pertinent to two distinct theories of liability: (1) the vicarious liability of an employer pursuant to the doctrine of

respondeat superior, and (2) the direct liability of an owner or general contractor pursuant to the doctrine of retained control. In the former case, evidence of an employer's retained control is relevant to the issue whether there was in fact a contractee-contractor relationship. An independent contractor is defined as " 'one who, carrying on an independent business, contracts to do work without being subject to the right of control by the employer as to the method of work but only as to the result to be accomplished.' " *Kamalnath v Mercy Memorial Hosp Corp*, 194 Mich App 543, 553; 487 NW2d 499 (1992) (citation omitted); cf. 1 Restatement Agency, 2d, § 2, p 12. If the employer of a person or business ostensibly labeled an "independent contractor" retains control over the method of the work, there is in fact no contractee-contractor relationship, and the employer may be vicariously liable under the principles of master and servant. See, e.g., *Brinker v Koenig Coal & Supply Co*, 312 Mich 534, 539-540; 20 NW2d 301 (1945); *Alar v Mercy Memorial Hosp*, 208 Mich App 518, 527; 529 NW2d 318 (1995); *Jenkins v Raleigh Trucking Services, Inc*, 187 Mich App 424, 428-429; 468 NW2d 64 (1991); *Janice v Hondzinski*, 176 Mich App 49, 53; 439 NW2d 276 (1989); see also 2 Restatement Torts, 2d, § 414, comment a, p 387.

In the latter case, the owner or general contractor's retention of supervisory control provides the basis for the imposition of an independent duty on the part of the owner or general contractor to exercise its retained control with reasonable care. The focus is not on the legal status of the relationship between the owner or general contractor and the independent contractor, but rather on the manner in which the owner

or general contractor acts or fails to act in relation to the safety of the injured party. The "doctrine of retained control" refers to this second sort of retained-control liability. The seminal case in Michigan regarding the doctrine of retained control is *Funk, supra,* in which our Supreme Court reasoned that a landowner or general contractor could be "held responsible for its *own* negligence in failing to implement reasonable safety precautions," where its "retained and exercised" control over a project was sufficient to create a corresponding duty to implement such precautions.[1] *Funk, supra* at 108 (emphasis added); see also *Plummer, supra* at 669 (BOYLE, J.).

The doctrine of retained control applies only in those situations involving "common work areas." *Plummer, supra* at 666-668 (LEVIN, J.), 669 (BOYLE, J.); see also *Groncki v Detroit Edison Co,* 453 Mich 644, 662; 557 NW2d 289 (1996) (BRICKLEY, C.J.); *Hughes v PMG Building, Inc,* 227 Mich App 1, 5-6; 574 NW2d 691 (1997); *Samhoun, supra* at 45-46; *Erickson v*

---

[1] Many of this Court's prior opinions have erroneously cited *Funk* (or cases relying on *Funk*) for the proposition that the doctrine of retained control subjects a contractee to liability for *its contractor's negligence.* See *Reeves v Kmart Corp,* 229 Mich App 466, 471; 582 NW2d 841 (1998); *Phillips v Mazda Motor Mfg (USA) Corp,* 204 Mich App 401, 407; 516 NW2d 502 (1994); *Szymanski v K mart Corp,* 196 Mich App 427, 429; 493 NW2d 460 (1992), vacated 442 Mich 912 (1993); *Little v Howard Johnson Co,* 183 Mich App 675, 681-682; 455 NW2d 390 (1990); *Wolfe v Detroit Edison Co,* 156 Mich App 626, 627; 402 NW2d 16 (1986); *Perry v McLouth Steel Corp,* 154 Mich App 284, 296; 397 NW2d 284 (1986); *Locke v Mach,* 115 Mich App 191, 193-194; 320 NW2d 70 (1982). As noted, the focus of this sort of claim is properly on the contractee's *own* duty and breach. See *Funk, supra; Plummer, supra* at 669-670 (BOYLE, J.). Accordingly, these opinions are somewhat misleading. See *Misiulis v Milbrand Maintenance Corp,* 52 Mich App 494, 498-499; 218 NW2d 68 (1974) (discussing the possibility of confusion arising from a disregard of the distinction between claims based on vicarious and direct liability).

*Pure Oil Corp*, 72 Mich App 330, 336; 249 NW2d 411 (1976). This limitation is rooted in our Supreme Court's initial explanation of the doctrine's rationale:

> Placing ultimate responsibility on the general contractor for job safety in *common work areas* will, from a practical, economic standpoint, render it more likely that the various subcontractors being supervised by the general contractor will implement or that the general contractor will himself implement the necessary precautions and provide the necessary safety equipment in those areas.
>
> *       *       *
>
> We regard it to be part of the business of a general contractor to assure that reasonable steps within its *supervisory and coordinating authority* are taken to guard against readily observable, avoidable dangers in *common work areas* which create a high degree of risk to a significant number of workmen. [*Funk, supra* at 104 (emphasis added).]

In order to have a "common work area," there need not be multiple subcontractors working on the same site at the same time. All that is required is that the employees of two or more subcontractors eventually work in the same area. See, e.g., *Hughes, supra* at 6.

There is no specific test to determine the degree of control sufficient to create an independent duty of care in an owner or general contractor under the doctrine of retained control, and the descriptions are somewhat varied. See *Phillips v Mazda Motor Mfg (USA) Corp*, 204 Mich App 401, 408; 516 NW2d 502 (1994) ("There must be a high degree of actual control; general oversight or monitoring is insufficient."); *Burger v Midland Cogeneration Venture*, 202 Mich App 310, 317; 507 NW2d 827 (1993) ("[T]he owner must retain at least partial control and direction of

the construction work, beyond safety inspection and general oversight."); *Samodai, supra* at 256 ("The requisite nature of this standard requires that the owner retain at least partial control and direction of *actual* construction work, which is not equivalent to safety inspections and general oversight."); *Miller v Great Lakes Steel Corp*, 112 Mich App 122, 127; 315 NW2d 558 (1982) (explaining that "some sort of substantive control must be maintained by the owner over the contractor's work in order to render the owner liable for an injury to a contractor's employee"); *Erickson, supra* at 339 (holding that an owner's mere retention of the contractual *right* to terminate employment of those not in compliance with its rules and regulations was not sufficient). Again, the Supreme Court's reasoning in *Funk, supra,* is instructive:

> [Defendant's representative] and his assistants did more than observe whether the contract was being properly performed. In many instances, *what they said, or left unsaid, determined how the work would be performed.* In the area of job safety their knowing acquiescence in nonperformance *encouraged, if not legitimized,* the derelictions of the sub- and general contractors. Having assumed a dominant role in this construction job, [Defendant] can properly be held responsible for the failure to implement adequate safety precautions. [*Funk, supra* at 108 (emphasis added).]

Although formulations such as "high degree of actual control" and "dominant role" suggest a fact-specific inquiry, one clear rule can be gleaned from *Funk* and its progeny. At a minimum, for an owner or general contractor to be held directly liable in negligence, its retention of control must have had some *actual effect* on the manner or environment in which the work was performed.

B

In this case, plaintiff's claim against BC was not brought on a theory of respondeat superior. Instead, plaintiff advanced a claim that BC could be held liable for its own negligence under the doctrine of retained control.[2] Therefore, we need not consider whether BC could properly be held liable as an employer under the principles of master and servant.

With respect to the doctrine of retained control, there was no evidence to suggest that Candelaria's work for Rego was performed in a common work area. To the contrary, the evidence suggested that Rego was the only subcontractor working for BC on the project. Consequently, BC could not properly be held liable pursuant to the doctrine of retained control. This particular failing, however, was not the basis for BC's motion for a directed verdict. Instead, BC argued that it did not retain sufficient control over the performance of the work to be held liable. On this basis too we conclude that BC could not properly be held liable. When viewed in a light most favorable to plaintiff, the evidence did not permit a finding that the control retained by BC had any effect on the manner or environment in which the work was performed. Cf. *Funk, supra* at 108. While Rego testified that his relationship with BC was such that, if BC's representative had "come out" to the work site and "seen something he didn't like, . . . he could stop what I was doing," the evidence was uncontroverted that,

---

[2] Any doubt that this was the basis for plaintiff's claim at trial is removed by the fact that, in responding to defendant BC's argument on appeal, plaintiff relies exclusively on the doctrine of retained control described in *Funk, supra*.

as a matter of fact, nobody from BC ever went to the job site or directed the manner in which the work was to be performed. Similarly, while BC's representative acknowledged, without explication, that BC had "control" over Rego's work with respect to correcting "unsatisfactory" work or behavior, there was no evidence that this control was ever exercised in any way. Cf. *Burger, supra* at 317 ("Contractual provisions subjecting the contractor to the owner's oversight alone are not enough to retain control."); *Erickson, supra* at 339. Therefore, the trial court erred in concluding there was sufficient evidence to present the issue to the jury.

For the reasons stated, we hold that the trial court erred in denying BC's motion for a directed verdict.

III

Horizon argues that the trial court erred in denying its motion for a directed verdict and in directing a verdict in favor of plaintiff regarding the issue of Horizon's negligence. We conclude that, under the unusual circumstances of this case, neither Horizon nor plaintiff was entitled to a directed verdict.

By statute, Horizon was required to obtain "the consent of the state highway commissioner" before commencing the cable construction work over state trunk line M-106. See MCL 247.184; MSA 9.264. On the day of the accident, Horizon applied for a permit from the MDOT that would allow it to perform the work described. Twelve days later the permit was issued subject to various conditions. Among these conditions were the following:

3. The permittee agrees as a condition of this permit to:

\*    \*    \*

  d. Provide and maintain all necessary precautions to pre-
vent injury or damage to persons and property from opera-
tions covered by this permit.
  e. Furnish, install and maintain all necessary traffic con-
trols and protection during permittee's operations in accor-
dance with the Michigan Manual of Uniform Traffic Control
Devices and any supplemental specifications set forth
herein.

The permit also provided that "[c]ommencement of
work set forth in the permit application constitutes
acceptance of the permit as issued." Finally, the per-
mit provided that "[t]he permittee is solely and fully
responsible for all activities undertaken pursuant to
the permit" and that "[t]he permit is not assignable
and not transferable unless specifically agreed to by
the [MDOT]." It is undisputed that the "necessary traffic
controls" referred to in the permit were lacking.

As noted, Horizon contracted with BC to perform
the work described in the MDOT permit; BC, in turn,
contracted with Rego to perform that portion of the
work at issue in this case. Accordingly, Horizon took
no action with respect to the actual construction
work, having delegated those responsibilities to BC.
Plaintiff's theory with respect to Horizon was that it
owed Candelaria a nondelegable duty arising by vir-
tue of the fact that it had obtained the MDOT permit.
The MDOT could not create a nondelegable duty in tort
owed by Horizon to Candelaria simply by including a
nonassignability provision in the permit issued to
Horizon. The only conceivable basis for imposing a
nondelegable duty on Horizon under which plaintiff
could proceed in negligence is that described in § 428
of the Second Restatement of Torts:

> An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity. [2 Restatement Torts, 2d, § 428, p 420.]

This rule, or some variation of it, has been adopted in several other states. See, e.g., *Eli v Murphy*, 39 Cal 2d 598, 599; 248 P2d 756 (1952); *Hamid v Metro Limo, Inc*, 619 So 2d 321, 322 (Fla App, 1993); *Barry v Keeler*, 322 Mass 114, 126-127; 76 NE2d 158 (1947). The rationale for the rule is that it is contrary to public policy to allow a party given special permission by the state to engage in a particular activity to escape liability arising from that activity by contracting it away to others. See, e.g., *Eli, supra* at 599-600; *Barry, supra* at 127. Whether this rule, or a variation, should be adopted in Michigan presents a novel question that we cannot answer in this appeal.

At trial, plaintiff relied on Restatement Torts, 2d, § 428 in support of his claim that Horizon could be held liable under a nondelegable duty and Horizon argued against application of the rule. Nevertheless, when the trial court denied Horizon's motion for a directed verdict, it did so not on the basis of § 428, but rather on what can best be described as a third-party beneficiary theory based on the MDOT permit. The trial court reasoned that specific conditions imposed by the MDOT permit defined the scope of a nondelegable duty owed by Horizon to the people of Michigan, including (presumably) Candelaria.[3] After

---

[3] The dissent reasons that "[b]ecause the trial court specifically ruled that there was no contract in this case, I do not think it is fair to charac-

endorsing the "third-party beneficiary" theory, the trial court declined to rule on plaintiff's request to be allowed to proceed under § 428 as well. It then granted plaintiff's earlier motion for a directed verdict of negligence against Horizon on the ground that Horizon did not comply with the specific conditions imposed by the MDOT permit.[4] Because the trial court directed a verdict of negligence in his favor, plaintiff had no incentive to challenge the trial court's decision not to rule on the validity of his § 428 argument or to encourage the trial court to instruct the jury regard-

---

terize the trial court's ruling as a 'third-party beneficiary' duty." *Post* at 90. We do not characterize the trial court's ruling as being a third-party beneficiary theory based on a *contract*, but rather as being a novel third-party beneficiary theory based on the permit. Our characterization is borne out by that portion of the trial court's ruling excerpted in the dissenting opinion.

[4] Plaintiff moved for a directed verdict of negligence against Horizon after Horizon conceded in its opening statement that "the traffic control was not what it should have been." The trial court declined to rule with regard to plaintiff's motion before hearing the evidence. After the proofs were taken, the trial court instructed the jury as follows:

It was the duty of Horizon Cablevision to comply with the conditions and specifications of MDOT permit 38051-79-94-0637 issued by the Michigan Department of Transportation in connection with the cable stringing work that Thomas Candelaria was performing on the day he was killed. In that connection, I charge you that it was the duty of Horizon Cablevision to provide and maintain all necessary precautions to prevent injury or damages to persons from operations covered by this permit.

I also charge you that it was the duty of Horizon Cablevision to furnish, install and maintain all necessary traffic controls and protection during permittees [sic] operations, and in accordance with the Michigan Manual of Uniform Traffic Control Devices. I instruct you that Horizon did not satisfy those duties and that this constituted negligence.

As to Horizon, you need only determine whether its negligence was a proximate cause of Plaintiff's damages, and what those damages are, if any.

ing an additional theory under which Horizon might be found negligent.

The unique theory forming the basis for the trial court's decision to deny Horizon's motion for a directed verdict, and to direct a verdict of negligence against Horizon, was not a viable theory of liability in this case. This is so primarily because the MDOT permit was not a contract, but rather a grant of permission. In order for a third-party beneficiary to enforce a promise, the promise must be made "by way of contract." See MCL 600.1405; MSA 27A.1405. Moreover, plaintiff pleaded a claim sounding in negligence rather than in contract. By directing a verdict of *negligence* on the basis of Horizon's failure to meet a specific condition of the MDOT permit, the trial court essentially ruled that Horizon's "violation" of the permit condition constituted negligence per se. Michigan does not subscribe to the doctrine of negligence per se.[5] *Zeni v Anderson,* 397 Mich 117, 128-129; 243 NW2d 270 (1976). Therefore, we hold that the trial court erred (1) in relying on the "third-party beneficiary" theory as the basis for denying Horizon's motion for a directed verdict and (2) in directing a verdict of negligence against Horizon on the basis of its failure to meet a specific condition of the MDOT permit.

To prevail in this case, plaintiff was required to overcome the general rule of nonliability for contractees already discussed in part II of this opinion. The rule described in Restatement Torts, § 428, if applicable, would allow plaintiff to do so by imposing a non-

---

[5] In Michigan, a violation of a statute creates a rebuttable presumption of negligence, while the violation of an ordinance or administrative regulation constitutes evidence of negligence. E.g. *Johnson v Bobbie's Party Store,* 189 Mich App 652, 661; 473 NW2d 796 (1991).

delegable duty on Horizon. Because plaintiff relied on
§ 428 below, we cannot determine whether Horizon
was entitled to a directed verdict without first decid-
ing whether § 428, or a variation of that rule, should
be adopted in Michigan and applied in this case. As
noted, the trial court made no ruling regarding this
issue. Appellate review is generally limited to issues
decided by the trial court. E.g., *Bowers v Bowers*, 216
Mich App 491, 495; 549 NW2d 592 (1996). Although
we could resolve the issue, given that it is a question
of law and the facts necessary for its resolution have
been presented, see, e.g., *Frericks v Highland Twp*,
228 Mich App 575, 585; 579 NW2d 441 (1998), we
decline to do so because the issue has not been
briefed by Horizon.[6] To attempt to decide this rela-
tively complex issue of first impression without the
benefit of briefing from both sides would force us to
construct and then evaluate our own "arguments."
That is certainly not a proper role for this Court.
Moreover, we think it would be inappropriate to
request supplemental briefing in the absence of a rul-
ing on the issue by the lower court. Thus, we are una-
ble to determine whether Horizon was entitled to a
directed verdict.[7]

---

[6] Horizon does not address § 428 in its brief on appeal. In its reply
brief, Horizon contends only that plaintiff's argument regarding § 428 is
irrelevant because plaintiff did not file a cross appeal challenging the trial
court's decision to "reject" the theory at trial. While Horizon is incorrect
in its assertion that the trial court rejected plaintiff's § 428 theory, we do
not deem the issue to have been forfeited because the question was not
addressed below. With respect to plaintiff's failure to raise the issue in the
context of a cross appeal, we note that a cross appeal is not necessary to
urge an alternative ground for affirmance, even if the alternative ground
was considered and rejected by the lower court. See *In re Herbach
Estate*, 230 Mich App 276, 284; 583 NW2d 541 (1998).

[7] Horizon makes one argument on appeal that is not dependent on
plaintiff's underlying theory of liability. Horizon contends that, under the

The judgment against Horizon is reversed because
the trial court erred in directing a verdict of negli-
gence on the basis of Horizon's "violation" of the MDOT
permit. Plaintiff's only remaining theory of liability
against Horizon is its argument based on Restatement
Torts, 2d, § 428.[8] We offer no opinion regarding the
viability of that theory in Michigan or its applicability
to the facts of this case.

IV

Horizon also contends that if plaintiff's recovery
was based on Candelaria's status as a third-party ben-
eficiary of the MDOT permit, his recovery should have
been limited to actual damages. Because we reject
the notion that plaintiff can recover under any sort of
third-party beneficiary theory, we need not consider
this issue further.

Both defendants also argue that the trial court
erred in instructing the jury that the violation of cer-
tain regulations under the Michigan Occupational
Safety and Health Act, MCL 408.1001 *et seq.*; MSA
17.50(1) *et seq.*, would constitute evidence of negli-
gence. Read in context, we think it is clear that this
particular instruction was made applicable to BC
only. Because we now hold that the trial court should

---

defective highway statute, MCL 691.1402; MSA 3.996(102), *only* the state
itself can be held liable for a failure to keep M-106 reasonably safe and fit
for public travel. This argument is without merit. On its face, the statute is
inapplicable to the facts of this case.

[8] The dissent describes plaintiff's "theories" as being one based on the
common law and another based on § 428. We disagree with this character-
ization. A careful reading of the record reveals that plaintiff advanced one
theory based on the specific language of the permit and another based on
the general common law as described by § 428.

have granted BC's motion for a directed verdict, we need not consider this issue further.

Finally, given the disposition of this appeal, we need not consider defendants' argument regarding the mediation sanctions awarded in the final judgment.

We reverse the judgment of the trial court and remand for a new trial with regard to defendant Horizon and for entry of an order dismissing the case with regard to defendant BC. We do not retain jurisdiction.

MCDONALD, P.J., concurred.

JANSEN, J. (*concurring in part and dissenting in part*). I concur with the majority that the trial court erred in denying defendant B. C. General Contractors, Inc.'s motion for a directed verdict because there is no evidence that BC retained any *actual* control over the subcontracted work. *Plummer v Bechtel Constr Co*, 440 Mich 646, 659-661 (LEVIN, J.), 672 (BOYLE, J.); 489 NW2d 66 (1992); *Johnson v Turner Constr Co*, 198 Mich App 478, 480-481; 499 NW2d 27 (1993); *Samodai v Chrysler Corp*, 178 Mich App 252, 256; 443 NW2d 391 (1989).

I respectfully dissent from the majority's decision to reverse the trial court's ruling to grant a directed verdict in favor of plaintiff against Horizon Cablevision, Inc. I believe that the trial court properly found that Horizon had a nondelegable duty to provide all necessary traffic control devices, as required under the permit issued by the Department of Transportation, and that Horizon undeniably breached that duty in failing to provide any traffic control devices because there is no factual dispute regarding this issue. I would affirm the jury's verdict with respect to Horizon.

Plaintiff's theory of liability against Horizon was that it had a nondelegable duty to furnish and maintain all necessary traffic control devices in accordance with the Michigan Manual of Uniform Traffic Control Devices, that Horizon did not meet any of the requirements of that duty, that such failure constituted negligence, and that this negligence was a proximate cause of the decedent's death. Defendants moved for a directed verdict with regard to plaintiff's claim that the permit issued to Horizon created nondelegable duties to comply with certain safety precautions. At trial, defendants argued that they were entitled to a directed verdict because the permit was issued after the accident occurred, that the Department of Transportation is responsible for the condition of the highway, and that plaintiff was not an intended third-party beneficiary of the contract (the permit issued to Horizon). Plaintiff argued that under the permit both Horizon and BC owed nondelegable duties. The trial court ruled that BC did not owe plaintiff a duty as a result of the permit, but that the permit imposed a nondelegable duty on Horizon for plaintiff's benefit.

Specifically, the trial court stated from the bench:

> Now, [Horizon] contracted with the State, actually it's not a contract, it gave them a right. They didn't pay the State anything. The States's [sic] not giving them any money. There is no contract. In that sense of the word here, what they did is, they promised the State of Michigan that they would perform this function for the benefit of the people of this State in a safe fashion. Because it was expected when this contract was entered into, that the motoring public of this state would be placed in potential danger by the activities of Defendant, Horizon, because it is obvious that vehicles and people, unlike the case cited here, which I haven't

had the opportunity to read, putting some telephone lines, or putting some street lights up on the side of the street doesn't involve interaction with the public. The public is not hopefully claiming those poles, while they are being installed, nor are they jumping underground holes where they are laying their cables.

But mechanics expect when you lay a wire along a highway, state highway with M in front of the name gives somebody some clue, anybody that's had any education, it is appropriate that people would come in contact with activities like that by merely driving your motor vehicle.

So the people of this state are, in my opinion, beneficiaries, who in the State MDOT Department would be driving in this area. I wonder what would MDOT be, what interest would they have. No losses to MDOT from their activity where we think cable would scrape the concrete and cause damage, displaced gravel cause the state a dollar to replace. I am not clear exactly what this permit and this right flowing to the State would be from this permit, if it isn't for the benefit of the people who use the highway.

But in the state we have here, there was a duty taken on, and it says right in the permit, you cannot delegate this duty interest to anybody else. I don't know what the duty would be to the state as an individual. The duty is to the people. And that's my opinion of it, and I think [Horizon] should stay on the case.

Following the trial court's ruling, plaintiff's counsel clarified that plaintiff's theories against Horizon were based on the "[c]ommon law, nondelegable duty for safety at the job site because of the unreasonable danger *and* franchise under Section 428 of the Restatement, general common law." (Emphasis added). Although the trial court did not specifically rule with regard to the viability of the theory under 2 Restatement Torts, 2d, § 428, p 420, I agree that there is a common-law duty on Horizon in this case. In this regard, I disagree with the majority's characterization

of the trial court's ruling as a "third-party beneficiary," *ante* at 80, theory and I disagree with the majority that the "only conceivable basis" for imposing a nondelegable duty on Horizon is discussed in § 428 of the Second Restatement of Torts, *ante* at 74.

The duty in this case is based on the common law. Our Supreme Court has stated:

> Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law. The duty may arise specifically by mandate of statute, or it may arise generally by operation of law under application of the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others. This rule of the common law arises out of the concept that every person is under the general duty to so act, or to use that which he controls, as not to injure another. . . .
>
> Such duty of care may be a specific duty owing to the plaintiff by the defendant, or it may be a general one owed by the defendant to the public, of which the plaintiff is a part. Moreover, while this duty of care, as an essential element of actionable negligence, arises by operation of law, it may and frequently does arise out of a contractual relationship, the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract. But it must be kept in mind that the contract creates only the relation out of which arises the common-law duty to exercise ordinary care. Thus in legal contemplation the contract merely creates the state of things which furnishes the occasion of the tort. This being so, the existence of a contract is ordinarily a relevant factor, competent to be alleged and proved in a negligence action to the extent of showing the relationship of the parties and the nature and extent of the common-law

duty on which the tort is based. [*Clark v Dalman*, 379 Mich 251, 260-261; 150 NW2d 755 (1967).]

The common-law duty applicable in this case was explained in *Misiulis v Milbrand Maintenance Corp*, 52 Mich App 494; 218 NW2d 68 (1974). This Court in *Misiulis* first noted the general rule that contractees (such as Horizon) are generally not vicariously liable for injuries to a third person sustained as a result of the negligence of an independent contractor. However, this Court noted an exclusion from this rule where the contractee is personally at fault, that is, where the contractee's own negligence is a proximate cause of the injury sustained. *Id.*, pp 498-499. This is the situation in the present case. Plaintiff's theory is that Horizon was negligent in failing to furnish and maintain traffic control devices on the highway and that such failure was a proximate cause of the decedent's death. In other words, this is not a situation in which the contractee (Horizon) is not negligent, but is nonetheless held to be vicariously liable for the negligence of the independent contractor. See, also, *Osman v Summer Green Lawn Care, Inc*, 209 Mich App 703, 710; 532 NW2d 186 (1995) ("Duty of care not only arises out of a contractual relationship, but it also arises by operation of law, a general duty owed by defendant to the public of which plaintiff is a part. . . . [E]ven though plaintiff was not in privity of contract, she was owed a duty of ordinary care by defendant.")

Further, the concept of a nondelegable duty has clearly been recognized in this state. In *Funk v General Motors Corp*, 392 Mich 91, 101; 220 NW2d 641 (1974), our Supreme Court stated that a landowner is ordinarily not responsible for injuries caused by a

carefully selected contractor to whom the landowner has delegated the task of building a structure. However, the landowner "is responsible if [the owner] does not truly delegate—if he retains 'control' of the work—or if, by rule of law or statute, the duty to guard against the risk is made 'nondelegable.' " In this case, the permit makes the duty to provide traffic safety devices nondelegable by Horizon.

Accordingly, in the present case, I would hold that Horizon had a common-law duty to use due care in its project and that the specific duty was set forth in the permit, that being the duty to furnish and maintain traffic control devices on the highway. This is really the duty utilized by plaintiff and the trial court. Because the trial court specifically ruled that there was no contract in this case, I do not think it is fair to characterize the trial court's ruling as a "third-party beneficiary" duty. Third-party beneficiary issues arise in contract law; it must be determined that an individual is an intended third-party beneficiary of a contract to sue on the contract to which the individual is not a party. *Rhodes v United Jewish Charities of Detroit*, 184 Mich App 740, 744; 459 NW2d 44 (1990). In this regard, Horizon's argument that the trial court incorrectly found that plaintiff is a third-party beneficiary because the permit did not create any third-party rights or other *contractual* rights is incorrect as a factual matter because the trial court ruled that the permit was not a contract.

As the majority notes, Horizon was required by statute to obtain the consent of the state highway commissioner before beginning the cable construction work over M-106. MCL 247.184; MSA 9.264. That "consent" was the permit issued by the Department of

Transportation. One of the conditions of the permit was that the permittee (Horizon) agrees to "[p]rovide and maintain all necessary precautions to prevent injury or damage to persons and property from operations covered by this permit." Contrary to Horizon's argument, the decedent clearly falls in this class of persons, as correctly ruled by the trial court. The precautions are intended to include everyone exposed to the operations covered by the permit, to which the decedent was exposed.

Additionally, Horizon's argument that the Department of Transportation could not purport to require Horizon to take safety precautions to maintain M-106 in a condition reasonably safe and convenient for public travel because those are statutory duties placed on the department is misplaced. Under MCL 691.1402; MSA 3.996(102), the Department of Transportation is responsible for maintaining the highway in reasonable repair so that it is reasonably safe and convenient for public travel. The statute provides that this duty extends only to the improved portion of the highway designed for vehicular travel and does not include any other installation outside the improved portion of the highway designed for vehicular travel. This is not a case involving road work, nor is it a case involving the repair or maintenance of the highway, nor is it a case involving any defect with the highway. The statute is simply inapplicable, and Horizon is incorrect in arguing that the Department of Transportation could not delegate its statutory liability. The Department of Transportation would not be liable in this case had plaintiff attempted to name it as a party defendant.

Horizon's argument that the permit was not in effect at the time of the cable work is similarly meritless. Horizon applied for the permit on the day of the accident, October 28, 1994, and the permit was issued on November 9, 1994. The permit provides that the "[c]ommencement of work set forth in the permit application constitutes acceptance of the permit as issued." Clearly, Horizon applied for the permit and commenced the work. Horizon cannot escape liability merely because of the time delay.

Thus, I would find that Horizon had a common-law duty to plaintiff, that the scope of that duty was set forth in the permit, that the permit specifically provided that the duty was nondelegable, and that it is undisputed that Horizon did not comply with the requirement that it install and maintain traffic devices. The trial court's decision to grant a directed verdict in favor of plaintiff with respect to the breach of duty is not a finding of negligence per se. In this case, the evidence was undisputed that Horizon did not furnish and maintain any traffic control devices. Thus, there is no factual question with regard to which reasonable minds could differ. *Brisboy v Fibreboard Corp*, 429 Mich 540, 549; 418 NW2d 650 (1988). Accordingly, the trial court did not err in granting a directed verdict in favor of plaintiff with respect to Horizon's duty and the breach of that duty.

Although not addressed by the majority because of its resolution of the issue concerning Horizon's duty, I will address the remaining issues raised by Horizon. I do not find those issues to require reversal. First, Horizon's contention that plaintiff's recovery would be limited to medical expenses should liability be imposed is meritless. Plaintiff's damages would be so

limited only in the event that his claim was based solely on contractual damages. Here, there is no contract and plaintiff's claim is premised on negligence. Therefore, plaintiff's damages are not limited to medical expenses only.

Next, the trial court did not err in instructing the jury that defendants, who were not the decedent's employers, had a duty to comply with safety regulations under the Michigan Occupational Safety and Health Act, MCL 408.1001 *et seq.*; MSA 17.50(1) *et seq.* Our Supreme Court has held that violations of administrative rules and regulations are evidence of negligence. *Beals v Walker*, 416 Mich 469, 481; 331 NW2d 700 (1982). Further, safety regulations in the workplace apply to employees of independent contractors. *Id.; Hardaway v Consolidated Paper Co*, 366 Mich 190, 197; 114 NW2d 236 (1962). On such Supreme Court authority, I would find no error in the trial court's instruction. Moreover, even if such an instruction was error, it was clearly harmless as it relates to Horizon because the only theory of liability against Horizon was the common-law duty to act with reasonable care as set forth in the permit (the specific duty to furnish and maintain traffic control devices). Because there was no theory premised on violation of the MIOSHA regulations regarding Horizon, there can be no error in the trial court's instruction in this regard. Indeed, the jury was instructed that it was the duty of Horizon to comply with the conditions of the permit and that it was the duty of Horizon to provide and maintain all necessary precautions to prevent damages to persons from operations covered by the permit. The trial court further instructed the jury that it was the duty of Horizon to furnish, install, and

maintain all necessary traffic control devices and that Horizon did not satisfy these duties. The jury had only to determine whether Horizon's negligence was a proximate cause of plaintiff's damages and what those damages were. Thus, the MIOSHA regulations were not relevant to the claim against Horizon and any instructional error was harmless.

Last, defendants argue that the trial court erred in failing to hold an evidentiary hearing with respect to the attorney fees awarded to plaintiff under MCR 2.403(O). Defendants are clearly wrong in asserting that there was no evidentiary hearing; hearings were held on January 29, 1997, and February 26, 1997. Further, the trial court did not arbitrarily select $40,000 as a reasonable attorney fee as defendants claim. At the January 29, 1997, hearing, the trial court questioned plaintiff's counsel at length regarding the hourly rate and time spent on the case. The trial court found that the amount of attorney fees requested ($61,627) was high and, on the basis of the argument presented by defense counsel, the trial court reduced plaintiff's counsel's hourly rate from $212 to $175, which the trial court found to be consistent with the rate in Ingham County. The trial court also noted that plaintiff's counsel handled the case expeditiously and had "obviously put a lot of time in" the case. The trial court concluded that plaintiff should be awarded $40,000 in fees and costs. At the February 26, 1997, hearing, the trial court went through the factors set forth in *Wood v DAIIE*, 413 Mich 573, 588; 321 NW2d 653 (1982), and again ruled that $40,000 in attorney fees and costs was a reasonable amount. The trial court's ruling that plaintiff was entitled to costs and the amount awarded as costs and attorney fees can-

not be said to constitute an abuse of discretion under these circumstances. *Joerger v Gordon Food Service, Inc,* 224 Mich App 167, 177-178; 568 NW2d 365 (1997).

Accordingly, I agree to reverse the verdict with regard to BC, but I would affirm the verdict against Horizon.