# STATE OF MICHIGAN

# COURT OF APPEALS

ERIN AUSTIN,

        Plaintiff-Appellant,

v

WALT DISNEY PICTURES, also known as
WALT DISNEY STUDIOS, and GO STUNTS,
INC.,

        Defendants-Appellees.

UNPUBLISHED
February 21, 2017

No.  329655
Oakland Circuit Court
LC No.  2014-142777-NO

Before:  STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Plaintiff appeals as of right the order of the trial court granting defendants, Go Stunts, Inc. (Go Stunts) and Walt Disney Pictures, also known as Walt Disney Studios (WDP), summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact).  We affirm.

Plaintiff was a stunt person on the set of the movie "Oz the Great and Powerful" ("Oz"). Plaintiff was a direct employee of Cast and Crew Entertainment Services, Inc. (Cast and Crew). On September 13, 2011, she was injured performing a stunt that involved being thrown into the air, hitting a wall, and falling to the ground.[1]  Go Stunts provided the stunt equipment used for the film pursuant to a contract with Michigan Motion Picture Productions, LLC (MMPP).  WDP was the financier and distributor of "Oz" pursuant to an agreement it had entered with Emerald City Films, Inc. (Emerald City).  Following her accident, plaintiff filed suit against Go Stunts and WDP.

## I.  GO STUNTS

### A.  PLAINTIFF'S ORIGINAL CLAIM AGAINST GO STUNTS

---

[1] Plaintiff received workers' compensation benefits through her employer, which has a statutory lien against her recovery in this case.  MCL 418.827(5).

-1-

Plaintiff's original allegations against Go Stunts were that it was responsible for rigging and directing the stunt and that it performed these tasks negligently, causing her injury. Go Stunts argues that any negligence action against it must fail because it did not owe plaintiff a duty. "The threshold question in a negligence action is whether the defendant owed a duty to the plaintiff." *Fultz v Union-Commerce Assocs*, 470 Mich 460, 463; 683 NW2d 587 (2004). The relevant factors for determining whether a duty should be imposed are "the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Murdock v Higgins*, 454 Mich 46, 53; 559 NW2d 639 (1997).[2]

The individual who directed the stunt was Scott Rogers. Rogers appears to have had a dual role. He was the owner of Go Stunts and testified that even while on set he served as a "representative" of that company. However, he was not paid by Go Stunts for his work on set. On set, he was employed by Cast and Crew, the same company as plaintiff, and Go Stunts took the position that he rigged and directed the stunts only in his capacity as an employee of Cast and Crew.[3] Rogers testified consistently with Go Stunts's position in this case, that Go Stunts was purely an equipment rental company and had no duties regarding the use of equipment or direction of stunts. The lease agreement by which Go Stunts provided equipment to MMPP is also consistent with that position. Indeed, plaintiff has not referred us to any provisions in the lease that she claims sets forth such a duty. The lease reads in pertinent part:

> Lessee, at its own expense, shall maintain each item of Equipment in good mechanical condition and running order. Lessee agrees to properly care for the Equipment in the use and storage thereof, to keep Equipment in a covered area when not in use, to keep Equipment clean, to use and operate Equipment within its rated capacity, to restrict the use, and operation thereof to safe, careful, trained and competent personnel selected, employed and controlled by Lessee and/or its sublessee(s) and to notify Lessor immediately of any accident affecting the Equipment, setting forth all relevant facts, and thereafter promptly furnishing to Lessor in writing all information required by Lessor in connection therewith. Lessee shall be liable for any and all damage to the Equipment due to its failure to observe any of the foregoing. If any unit of Equipment is damaged as the result of abusive or other improper usage, Lessee agrees to pay Lessor promptly for all costs and expenses incurred by Lessor in connection with repairing the Equipment damaged. The rent on any of the Equipment will not be prorated or abated while the Equipment is being serviced or repaired for any reason for which Lessee is liable. Lessor will not be under any liability or obligation in any manner to provide service, maintenance, repairs, or parts for the Equipment, except that Lessor will replace any Equipment that malfunctions or becomes inoperable through no fault of the Lessee at no cost to Lessee . . . .

---

[2] The existence of a duty is a legal question decided by the trial court, which we review de novo. *Hill v Sears, Roebuck & Co*, 492 Mich 651, 659; 822 NW2d 190 (2012).

[3] Because he and plaintiff were co-employees, Rogers could not be sued. MCL 418.827(1).

* * *

> Lessee will use the Equipment in a careful and proper manner and will not permit any of the Equipment to be operated or used in violation of any applicable federal, state, or local statute, ordinance, rule or regulation relating to the possession, use, or maintenance of the Equipment.

Plaintiff argues, however, that Rogers's testimony and one of Go Stunts's answers to her interrogatories demonstrate that Go Stunts voluntarily assumed additional duties. Specifically plaintiff's interrogatory #7 asked Go Stunts to "[i]dentify all persons who were involved in maintaining the harness and associated equipment on the set of Oz the Great and Powerful." In response, after Go Stunts objected to the request as overly broad, it stated, "Subject to and without waiving these objections, Go Stunts was responsible for maintaining Go Stunts's harness. Go Stunts met all its obligations under Equipment Lease agreement with [MMPP] to keep the equipment 'in good mechanical condition and running order.' " During Rogers's deposition, plaintiff's counsel directed his attention to this interrogatory answer and asked how Go Stunts could maintain the equipment if, as Rogers said, it had no employees. After indicating that he determined if equipment needed to be fixed or destroyed, but not as an employee of Go Stunts, Rogers further stated, "I as a representative, not an employee, as a representative of Go Stunts, determine when the equipment is provided -- put forth in front of me by the rigging department of the film, I determine whether it's to be fixed by an outside source or whether it's to be destroyed."

We disagree with plaintiff's claim that these statements demonstrate that Go Stunts had voluntarily assumed a duty to inspect and maintain the equipment on site. The lease does not contain any provision requiring Go Stunts to maintain the equipment during the lease and, more to the point, expressly disclaims any such duty and all warranties. If any duty to maintain the equipment can be read into the contract or the interrogatory answer, a proposition that appears unlikely, it was clearly limited to maintaining the equipment between leases, i.e. while it was in Go Stunts's possession. Similarly, Rogers's testimony was not that he, as owner of Go Stunts, inspected equipment on set; rather, he testified that if he was notified on set that a piece of equipment was defective, then, on behalf of Go Stunts, he would determine whether the equipment could be repaired or must be replaced. That does not imply a duty on behalf of Go Stunts to inspect or maintain the equipment on site.

Rogers's dual role does complicate the analysis in this case. However, it is clear that all of Rogers's responsibilities to inspect and maintain equipment on set; to plan, stage and direct stunts; and to assure that the stunts were performed safely were in his capacity as an employee of Cast and Crew, not as a representative of Go Stunts. Therefore, defendant Go Stunts was entitled to summary disposition as to plaintiff's original claim.

B.    PLAINTIFF'S REQUEST TO AMEND HER COMPLAINT TO ADD A COUNT
ALLEGING DEFECTIVE EQUIPMENT

Plaintiff next argues that the trial court erred when it denied her the opportunity to amend her complaint. Contrary to the original complaint, which focused on an alleged failure to properly plan the stunt or to properly use the equipment, the proposed amended complaint

focused on an allegation that the equipment provided by Go Stunts was defective when delivered. While plaintiff's original complaint sounded strictly in allegations of negligence, the proposed amended complaint sounded in allegations of products liability. We review, for an abuse of discretion, the denial of a motion to amend a complaint. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 215-216; 859 NW2d 238 (2014). "[I]f the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion." *Wormsbacher v Seaver Title Co*, 284 Mich App 1, 8; 772 NW2d 827 (2009). A trial court has discretion to deny a motion to amend a complaint for "particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility." *In re Estate of Kostin*, 278 Mich App 47, 52; 748 NW2d 583 (2008).

We reject plaintiff's claim that the trial court abused its discretion in denying her leave to amend her complaint. Initially, the amendment was exceptionally tardy as it came only three weeks before trial in a case that had been pending for over a year and that had previously been filed and voluntarily dismissed. While "[d]elay, alone, does not warrant denial of a motion to amend . . . a court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result." *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997).

More significantly, the sought amendment was futile. *Richard v. Schneiderman & Sherman, PC (On Remand)*, 297 Mich App 271, 274-276; 824 NW2d 573 (2012). Plaintiff testified that the stunt was rehearsed numerous times without incident immediately before her injury but offers no theory, let alone evidence, as to how a winch or ratchet that had been delivered with a significant defect would function properly for an extended period after delivery, but then suffer a catastrophic failure without any intervening change or recalibration. Indeed, plaintiff implicitly recognized this by initially pursuing her claim on a theory that the equipment was improperly set or adjusted on-site for the subject stunt. Plaintiff has not even come forward with any evidence that the manner in which plaintiff was injured can occur due to a defective device rather than one that has been improperly used by the person controlling it.

Plaintiff argues that the need to amend arose from late-arising disagreement concerning the mechanism by which the stunt was performed. Plaintiff testified (and her experts averred) that the stunt was performed using a ratchet or winch, i.e. mechanical equipment provided by Go Stunts. Rogers and several other workers on set testified that the stunt was a "hand-pull" stunt in which the stunt person is pulled upwards by a cable when a person on the other end of the cable jumps off a ladder. Plaintiff also argues that a second video produced by defendant purporting to show the stunt being done as a "hand-pull" was made on a different set and with a different stunt person.[4] It is clear that there is a factual dispute in this regard. However, the accuracy of that video is of no consequence in regard to the motion to amend. Plaintiff has always asserted that the stunt was done mechanically and could have, at any time, sought to

---

[4] Defendant maintains that the tape is accurate but also offers various explanations as to how provision of an inaccurate tape might have occurred. We express no opinion as to the tape's accuracy.

amend her complaint to allege provision of defective equipment, in addition to, or instead of, negligent use of the device on set by Rogers.[5]

The trial court's decision denying plaintiff leave to amend her complaint, whether implicit or explicit, was within the range of reasonable and principled outcomes, and we do not find it to be an abuse of discretion.

## II. WDP

Plaintiff argues that the trial court erred when it granted WDP's motion for summary disposition because there is a genuine issue of material fact regarding WDP's duty to plaintiff. She claims that the evidence establishes that WDP retained and exercised a sufficient level of control over the production of "Oz" to make it responsible for workplace safety. We disagree.

To support her argument that the trial court erred in granting WDP's motion for summary disposition, plaintiff relies on the theory of retained control addressed in *Plummer v Bechtel Constr Co*, 440 Mich 646; 489 NW2d 66 (1992), *Candelaria v BC Gen Contractors, Inc*, 236 Mich App 67; 600 NW2d 348 (1999), and *Burger v Midland Cogeneration Venture*, 202 Mich App 310; 507 NW2d 827 (1993). Specifically, she argues that WDP retained sufficient control over "Oz" to have been responsible for safety on set, including safety related to the stunts.

The cases plaintiff cites generally involve an analysis of a property owner or general contractor's liability to employees of subcontractors who are injured on the job. In *Plummer*, for example, a subcontractor employee, injured at work, brought suit against the owner of the work site and the general contractor. *Plummer*, 440 Mich at 648-649, 651 (opinion by LEVIN, J.). In *Burger*, the plaintiff, a subcontractor employee, was injured in a construction accident and brought suit against the owner of the plant he was working on at the time of the injury. *Burger*, 202 Mich App at 311. Finally, in *Candelaria*, a cable television service hired an independent contractor to install its television service, and that contractor hired another independent contractor to perform a portion of the work. 236 Mich App at 70. The plaintiff, a subcontractor employee, was killed while performing the work. *Id.* Therefore, we must determine if a genuine issue of material fact exists regarding whether WDP retained sufficient control over "Oz" to have been responsible for workplace safety and thus owed a duty to plaintiff.

Generally, "when an owner or general contractor hires an independent contractor to perform a job, the owner or general contractor may not be held liable in negligence to third parties or employees of the independent contractor." *Id*. at 72. The independent contractor is responsible for workplace safety. *Id*. However, "[o]ne commonly recognized exception to the

---

[5] Plaintiff argues that she could not have inspected the subject machine because defendant, having falsely asserted that no machine was used in this stunt, was refusing to produce the relevant device. However, plaintiff could have requested identification and inspection of the mechanical stunt devices that were on set that day, or even all mechanical stunt devices used during the filming at this location. We find no such requests and no motion to compel such an inspection in the record.

general rule is the 'doctrine of retained control.' " *Id*. Retention of control provides the basis for the finding of a duty to exercise that control with reasonable care. *Id*. at 73. The retained control doctrine only applies where there is a "common work area." *Ormsby v Capital Welding*, 471 Mich 45, 48-49; 684 NW2d 320 (2004).

> To establish the liability of a general contractor . . . a plaintiff must prove four elements (1) that the defendant contractor failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area. [*Id*. at 57.]

Plaintiff has failed to create a question of fact as to any of these factors. There is no evidence that WDP failed to take reasonable steps within its supervisory authority. Its contract with Emerald City made clear that the responsibility for day-to-day safety issues rested with Emerald City. And unlike the situation in *Plummer*, where the project owner had 125 employees on site including 20 safety inspectors, here, a single WDP representative visited the set on only a few occasions in order to receive production status reports. Plaintiff also has not demonstrated that the danger was "readily observable" or that the risk it created affected "a significant number of workmen . . . in a common work area."[6] Because plaintiff has not presented evidence that WDP retained and exercised sufficient control over the production of "Oz" to make it responsible for workplace safety under the test articulated by our Supreme Court in *Ormsby*, the trial court did not err in granting WDP's motion for summary disposition.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

---

[6] Plaintiff has not directed us to any evidence indicating that the operation of stunt winches or ratchets is likely to affect multiple employees of various employers. Rather, it appears that malfunction of such a device would predominantly, if not exclusively, affect only stunt persons, the number of which, and employers of which, are not identified.